**UNITED STATES of America**

v.

**Kerry DECAY, et al**

**No. CRIM.A. 05–186.**

United States District Court,
E.D. Louisiana.

Nov. 8, 2005.

Jan Maselli Mann, U.S. Attorney's Office, New Orleans, LA, for United States of America.

Arthur A. Lemann, III, Arthur A. Lemann & Associates, John Robert Martzell, Scott R. Bickford, Martzell & Bickford, New Orleans, LA, Michael Hudson Ellis, Sherman, Ellis, Breslin, Murray, Recile & Griffith, LLP, Metairie, LA, for Kerry DeCay, et al.

### ORDER AND REASONS

BARBIER, District Judge.

Before the Court is the Government's **Motion to Disqualify Counsel.** Rec. Doc. 33. The Government seeks to disqualify Arthur Lemann, III and Michael Ellis as counsel for Kerry DeCay and Reginald Walker, respectively, arguing that these attorneys' former representation of two Government witnesses—Howard Moses in the case of Lemann and William Pappas in the case of Ellis—has created an actual conflict of interest which the prior clients have not waived. The Government supplemented the motion alleging an additional conflict due to the fact that Michael Ellis' partner, Julian Murray, currently represents Randall Moore, a defendant in a related criminal case who will also be a prosecution witness in the instant case. Defense counsel oppose the motion, arguing that there is no conflict, that defendants are willing to waive any conflict that would prejudice them, and in Mr. Walker's case, that Mr. Ellis will not cross-examine Mr. Pappas, and he waives any appellate issue with respect to the failure to cross-examine Mr. Pappas.

The Court heard oral argument on the motion on August 3, 2005, and subsequently ordered the Government to file, *in camera* and under seal, transcripts of the witnesses' grand jury testimony, transcripts of the witnesses' interviews with the Government or any of its agents, and any debriefing notes or notes of other interviews with the witnesses by August 15, 2005. By the same date, Mr. Ellis and Mr. Lemann were ordered to file, *in camera* and under seal, any notes of interviews with the former clients in question, either taken by themselves or members of their firm, and if those were unavailable, affidavits of the interviewing attorney's best recollection of the contents of the conversations with the witnesses in question.[1]

---

1. Defense counsel has suggested that the Court's procedure in requiring the submission of the listed materials—the only method the Court can conceive of to categorically resolve the question whether the prior representation creates a non-waivable conflict in this case— is improper because the *in camera* disclosure to the Court results in a waiver of the attorney-client privilege. To the contrary, numer-

ous courts have required the *in camera* submission of privileged materials for a variety of reasons, chief among them determining whether a privilege exists. *See, e.g., United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (*in camera* review required to determine if crime-fraud exception applies); *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)

Having exhaustively reviewed all the materials submitted, and having considered the indictment in detail, the Court finds that attorneys Lemann and Ellis have neither a conflict nor a serious potential of a conflict that could not be waived, and the Government's motion must therefore be denied.

## BACKGROUND

On June 16, 2005, the Government filed a 37–page indictment against DeCay and Walker and two other defendants. The indictment alleges, *inter alia,* illegal acts by the defendants in connection with three contracts between the City of New Orleans and Johnson Controls. The objective of the contracts was to increase energy efficiency through the replacement and upgrading of fixtures and equipment such as chillers, boilers, light fixtures, light bulbs, window tinting, and controls. As a result of the replacements and upgrades, the City was supposed to achieve energy savings that would pay for all of the costs associated with the contracts. The savings failed to materialize and the City ended up having to pay $3.2 million each year, which it paid with funds borrowed by the sale of bonds.

According to the indictment, DeCay, on behalf of the City of New Orleans, oversaw much of the work done by Johnson Controls, and negotiated Phases II and III of the City's agreements with Johnson Controls. Walker owned and operated Moss Creek Development Company, which entered into a subcontract with Johnson Controls. Among other things, the indictment alleges that the defendants conspired to defraud the City by causing the City to overpay Johnson Controls in order to divert a portion of the overpayments to themselves.

The Government contends that a conflict of interest is present because it will be relying in part on the testimony of Moses and Pappas to convict DeCay and Walker, so "[i]f Mr. Lemann and Mr. Ellis stay in the case ignoring their loyalty to their former clients, any conviction of their current clients would be subject to post-conviction attack." Rec. Doc. 33 at 3. Further, the Government argues that Randall Moore "will be providing direct evidence of the payment of kickbacks to Mr. Ellis' client's co-defendant as part of the overall conspiracy charged against all of these defendants." While the Government's motion is not explicit as to whether it seeks to preempt prejudice to the former clients or the current clients, its preoccupation with the attorneys' duty of loyalty to Pappas and Moses, the problem of Pappas and Moses being cross-examined by their former attorneys, and the Government's insistence that a knowing and intelligent waiver by the defendants would not obviate the conflict, all indicate that the motion seeks to preserve the rights of the former clients and the integrity of the proceedings. Nevertheless, the Court's analysis herein also considers the possibility of prejudice to Mr. Lemann's and Mr. Ellis's current clients.

## DISCUSSION

The Sixth Amendment guarantees that "in all criminal prosecutions the accused

(*in camera* inspection required to determine if executive privilege applies); *United States v. Parker,* 586 F.2d 422 (5th Cir.1978) (*in camera* review to determine existence of attorney-client privilege); *Lasker v. Stevens Graphics Corp.,* 1994 WL 389467 (N.D.Tex. April 29, 1994) (same); *see also,* Paul R. Rice, *The Eroding Concept of Confidentiality Should Be Abolished,* 47 DUKE L.J. 853, 898 n. 100 (1998) (collecting cases). In at least one case, the trial court ordered the *in camera* submission of the same materials ordered herein for the same reason—to resolve the question whether multiple representation created a conflict. *See, United States v. Morrell–Corrada,* 343 F.Supp.2d 80 (D.Puerto Rico, 2004).

shall enjoy the right ... to have the Assistance of Counsel for his defence." Moreover, "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). However, the right is not absolute: the presumption in favor of a defendant's counsel of his choice "may be overcome not only by a demonstration of actual conflict but by a showing of serious potential for conflict." *Id.* at 164, 108 S.Ct. 1692. This is because notwithstanding the guarantees of the Sixth Amendment, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160, 108 S.Ct. 1692. "Whether and when the defendant's right must yield to that higher interest is committed to the sound discretion of [the trial court]." *United States v. Morris*, 785 F.Supp. 1238, 1240 (N.D.Tex. 1992) (citing *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir.), *cert. denied*, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979)).

■ Applying *Wheat*, "[w]hen an issue of conflict of interest arises, the Court must first determine whether an actual or potential conflict exists. If such a conflict exists, the Court must ensure that the conflict is either eliminated or waived. If the conflict cannot be eliminated or waived, the attorney must be disqualified." *U.S. v. Edwards*, 39 F.Supp.2d 716, 743 (M.D.La.1999).² The Court's first task then, is to determine whether an actual or potential conflict exists.

■ In considering whether a conflict exists which would warrant disqualification, courts look to state and national ethical standards adopted by the court. *Babineaux v. Foster*, 2005 WL 711604, *1 (E.D.La. Mar. 21, 2005) (citing *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir.1995)). These rules apply in disqualification motions brought in criminal as well as civil cases. *Perillo v. Johnson*, 205 F.3d 775, 801 (5th Cir.2000). Accordingly, the instant motion must be resolved with reference to the Local Rules for the Eastern District of Louisiana, the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules"), and the Louisiana Rules of Professional Conduct. *Babineaux*, 2005 WL 711604 at *1 (citing *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir.2001)). The task is simplified by the fact that the Eastern District of Louisiana has adopted the State of Louisiana's Rules of Professional Conduct, which are identical to the ABA Model Rules in all respects relevant to this motion. *See*, L.R. 83.2. 4E, La. State Bar Art. XVI, ABA Model Rules of Professional Conduct.

■ As numerous district courts have recognized, the party seeking disqualification bears the burden of proving a conflict. *See, e.g., Babineaux*, 2005 WL 711604, *2; *Parker v. Rowan Companies, Inc.*, 2003 WL 22208569, *8 (E.D.La. Sept.23, 2003); *Cramer v. Sabine Transp. Co.*, 141 F.Supp.2d 727, 730 (S.D.Tex.2001). Moreover, "[a] disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing. Therefore, notwithstanding the fundamen-

**2.** It should be borne in mind, however, that our case is distinguishable from *Wheat* and (and other situations in which Fed.R.Crim.P. 44 would apply) in that our case does not involve dual representation—that is, it is not a situation involving "two or more defendants [who] have been charged jointly ... or have been joined for trial." Fed.R.Crim.P. 44(c)(1)(A).

tal importance of safeguarding popular confidence in the integrity of the legal system, attorney disqualification ... is a sanction that must not be imposed cavalierly." *F.D.I.C. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1316 (5th Cir.1995).

### Conflicts affecting former clients

Rule 1.9 of the Louisiana Rules of Professional Conduct, concerning a lawyer's duty to former clients, provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Moreover,

> [a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage of the former client except as the[ ] Rules would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

■ In addition to professional conduct rules, courts in this circuit have also employed a "substantial relationship" test to guide the conflict inquiry. Under that test, "[a] party seeking to disqualify counsel ... need not prove that the past and present matters are so similar that a lawyer's continued involvement threatens to taint the trial. Rather, the former client must demonstrate that the two matters are substantially related." *Edwards,* 39 F.Supp.2d at 734, citing *In re American Airlines, Inc.,* 972 F.2d 605, 616 (5th Cir.

1992). *Edwards* went on to opine that a substantial relationship "may be found only after the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent.'" *Id.* at 734 (quoting *American Airlines,* 972 F.2d 605).

### Conflicts affecting current clients

With respect to conflicts affecting current clients, Rule 1.7 of the Louisiana Rules of Professional Conduct provides that:

> a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

In addition to the professional conduct rules, jurisprudence examining conflicts in the specific context of criminal cases has held that a conflict exists when "counsel's allegiance to the accused [would be] compromised by competing obligations owed to other clients." *Perillo v. Johnson,* 205 F.3d 775, 798 (5th Cir.2000)(other citations omitted). The Fifth Circuit has recognized that a competing obligation may be present when "an attorney has confidential information that is helpful to one client but harmful to another." *Id.* (citing *United States v. Placente,* 81 F.3d 555, 559 (5th Cir.1996)) (collecting cases). The Fifth Circuit has also "relied upon the relationship between the subject matter of the

multiple representations when determining whether counsel was burdened by an actual conflict." *Id.*, citing *Russell v. Lynaugh*, 892 F.2d 1205, 1214 (5th Cir.1989)(other citations omitted). Also considered is "the temporal relationship between the prior and subsequent representations. Where the prior representation has not unambiguously been terminated, or is followed closely by the subsequent representation, there is more likely to be a conflict arising from defense counsel's representation of the first client." *Id.* (citations omitted). "Where, on the other hand, defense counsel's prior representation unambiguously terminated before the second representation began, the possibility that defense counsel's continuing obligation to his former client will impede his representation of his current client is generally much lower." *Id.* at 798–99 citing *Vega v. Johnson*, 149 F.3d 354 (5th Cir. 1998), *cert. denied*, 525 U.S. 1119, 119 S.Ct. 899, 142 L.Ed.2d 899 (1999).

█ The Fifth Circuit "has also relied upon the character and extent of the prior representation. Where the prior representation involved a formal and substantial attorney-client relationship, a finding of actual conflict is more likely." *Id.* at 799 (citations omitted). "Where, however, defense counsel's involvement in the prior representation was either transient or insubstantial, [the court has] been less inclined to find an actual conflict." *Id.* (citations omitted). "Thus, whether the facts of a particular case give rise to an actual conflict depends, not so much upon the label used to define the attorney's conflict, as upon these and any other factors that illuminate whether the character and extensiveness of the prior representation were such that counsel is prevented 'by his interest in another's welfare from vigorously promoting the welfare of his [current] client.'" *Id.* (citing *Vega*, 149 F.3d

at 360). In addition, the "substantial relationship" test may also be applied in examining conflicts affecting current clients. *Id.* at 800 (citing *In re American Airlines*, 972 F.2d 605, 614–16 (5th Cir.1992)).

Applying these rules and precedents, the undersigned has determined that in the instant case, no actual or potential conflict is present that would prejudice either the former or current clients of Lemann and Ellis.

### *Arthur Lemann, III's representation of Howard Moses and Kerry DeCay.*

It is undisputed that Lemann's son, a member of Lemann's firm, represented Howard Moses when he was interviewed by the FBI about his contract for consulting relative to the Johnson Controls contract at issue in the indictment. The Government contends that it is inconceivable that Lemann's office did not have further privileged conversations in connection with this representation, and that Lemann will be required to cross-examine Moses and explore those privileged matters, resulting in a violation of Lemann's duty of loyalty to his former client, Howard Moses.

█ The Court recognizes that "[t]he law presumes that a lawyer receives confidential communications in the course of his representation of a client." *United States v. Morris*, 785 F.Supp. 1238, 1240 (citing *United States v. Shepard*, 675 F.2d 977, 980 (8th Cir.1982)); *United States v. Cheshire*, 707 F.Supp. 235, 239 (M.D.La.1989). Nevertheless, this presumption may be rebutted; for instance, when a defense attorney represents the former client/witness in preliminary matters only and credibly denies that he gained any confidences from the witness during the representation. *Id.* In *Morris*, the trial judge found that the attorney the Government wished to have disqualified due to prior representation of prosecution witness, as "one of its officers and subject to severe discipline for prevar-

ication, [informed the court] that he possessed no confidences" from the former client/witness. *Id.* The court was persuaded that the attorney's assertions were credible, and therefore found no actual conflict of interest. *Id.*

■ In the present case, the Court has gone beyond Mr. Lemann's representations and has reviewed *in camera* Mr. Lemann's office file generated during its prior representation of Moses, Moses' grand jury testimony, and the notes of Government interviews with him, as well as the indictment against DeCay, and has concluded that DeCay's interests are not materially adverse to Moses' interests. As pointed out by defense counsel, Moses is neither a victim in the indictment, a co-defendant, a co-conspirator, an unindicted co-conspirator, a participant, or a witness to any of the alleged criminal transactions that DeCay is alleged to have engaged in. In fact, Moses is not referred to in the indictment at all. Moreover, the materials submitted *in camera* do not suggest that DeCay's defense would be buttressed by eliciting any testimony from Moses that could prejudice Moses, and Lemann's office file on Harold Moses does not reveal any information that could be used to Moses' disadvantage.[3] Thus, the Court finds that Lemann has successfully rebutted the presumption that he is in possession of confidences that would create an actual conflict, or likely give rise to a potential conflict, that would affect Moses. Put simply, it does not appear that Lemann's allegiance to Moses is or could be compromised by any competing obligation owed to DeCay.

Similarly, the Court has determined that Lemann's responsibility to DeCay will not be materially limited by his firm's prior representation of Moses; that the prior representation has been unambiguously terminated; and that Lemann's firm's brief representation of Moses in connection with the FBI questioning was, relatively speaking, transient and insubstantial. Accordingly, the Government has also failed to demonstrate that an actual or potential conflict exists that would compromise Lemann's obligation to DeCay, so he need not be disqualified from that representation.

### *Michael Ellis' representation of William Pappas and Reginald Walker.*

■ Ellis represented Pappas in connection with a 2002 conviction for committing mail fraud against the City of New Orleans. According to the Government, Pappas will be testifying regarding bribes given *to DeCay* in an effort to secure city contracts and Johnson Controls work through DeCay. Thus, the Government argues, Ellis will be unable to cross-examine his former client, because doing so would require him to exploit the confidences of his former client to benefit his current one. Ellis has responded that the public record reflects the fact that no conflict exists since the Pappas and Walker matters are entirely unrelated. Walker has further agreed that Ellis will not cross-examine Pappas, if he is called as a witness, and Walker has voluntarily, knowingly, and intelligently waived any ineffective assistance of counsel claims for purposes of appeal for failure to cross-examine.

The Court acknowledges that if Ellis were seeking to represent DeCay, he would have a problem: since Pappas will be testifying to bribes he allegedly gave DeCay, their interests would be materially

---

**3.** Because of the privileged and confidential nature of the submissions, the Court does not quote directly from them in this order.

adverse. However, Ellis does not seek to represent DeCay, but Reginald Walker, and as noted by the defense, the Pappas case did not refer to any City employees except for Wallace Schief, and neither Walker, Walker's company Moss Creek, nor Johnson Controls were mentioned or implicated in Pappas' indictment. Rather, the evidence submitted reflects that Walker had never met Pappas or the principals or employees of Energy Management Services. Thus, no confidences regarding Walker were shared by Pappas with Ellis during the course of the prior representation. In addition, Walker was indicted 22 months after the Pappas matter was concluded.

These facts, together with the contents of the *in camera* submissions (especially Pappas' grand jury testimony) indicate that Pappas' interests are in no way materially adverse to Reginald Walker's. There appears to be no relationship between the two representations, much less a substantial one. As a result, it simply does not appear that Ellis' allegiance to Pappas is or could be compromised by any competing obligation owed to Walker.

Nor does it appear that Ellis' representation of Walker would be materially limited by his former representation of Pappas. As already noted, the subject matters of the representations are unrelated. Moreover, the prior representation has been unambiguously terminated and was terminated 22 months prior to the indictment herein. Accordingly, the Government has also failed to demonstrate that an actual or potential conflict exists that would compromise Ellis' obligation to Walker, so he need not be disqualified from that representation.

*Julian Murray's representation of Randall Moore*

■ As noted above, the Government supplemented its original motion with a memorandum arguing that an additional reason to disqualify Ellis exists because Ellis' law partner, Julian Murray, currently represents a witness in this case, which was later learned to be Randall Moore.

"While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so" by the rules governing duties to former and current clients. Louisiana Rule of Profession Conduct 1.10. Thus, Murray's representation of Moore is imputed to Ellis for purposes of the conflicts analysis. Ellis may thus be viewed as concurrently representing both Moore and Walker, after having previously represented Pappas.

As a threshold matter, it appears to the Court that any conflict problem this created would require the disqualification of Murray, the later retained attorney, rather than Ellis. In addition, the Court notes that the Government's memorandum is concerned only with whether Murray's representation of Moore conflicts with Ellis' representation of Walker—that is, whether Moore's interests are materially adverse to Walker's. However, the representation also raises the question of whether Moore's interests are materially adverse to Pappas' interests.

Nevertheless, the same rationale supporting the finding that Ellis' successive representations of Pappas and Walker would not result in a conflict applies to the Moore/Walker representation: Moore's testimony appears to be materially adverse to DeCay, but not to Walker. Further, there appears to be no connexity at all between Moore and Pappas. Moore has been indicted in a separate case, 05–236, pending in another section of this court. While the Government argues that Moore will be giving direct evidence of the payment of kickbacks to Mr. Ellis' client's co-

defendant (DeCay) as part of the overall conspiracy, once again, neither Ellis (nor Murray) seeks to represent DeCay. The Court has carefully reviewed Moore's grand jury testimony and the notes of Government interviews with him, and it simply does not appear that his interests are materially adverse to Pappas' or Walker's; nor does it appear that Ellis' former client, Pappas would be disadvantaged by any information possessed by Moore. Similarly, there is no support for the conclusion that Ellis' representation of Walker would be materially limited by Murray's representation of Moore, and vice versa. In sum, it simply does not appear that Ellis' duty of loyalty to his current or former clients is affected at all by Murray's representation of Randall Moore.

Accordingly, for the foregoing reasons, the Government's **Motion to Disqualify Counsel** (Rec.Doc. 33) should be and is hereby **DENIED**.