GARRETT, J.
|, This writ granted to docket involves a motion to disqualify counsel and a ruling below which required that all evidence be adduced in open court, including evidence which may be protected by attorney-client privilege. Under the very unusual and unique circumstances presented here, we find that the trial court erred in its ruling and in refusing to utilize alternative methods of conducting the hearing to protect matters that may be covered by the attorney-client privilege. Accordingly, we make the writ peremptory, reverse the trial court ruling, and remand with instructions.
FACTS
The plaintiff, Ronald Keith, has filed two suits in the 26th Judicial District Court against his mother, Marjorie Matlock Keith, pertaining to her position as trustee of two family trusts. In the first suit, filed on December 5, 2011, the plaintiff sought to remove her as trustee and have himself named as sole trustee. In the second suit, filed on August 1, 2012, he sought damages for alleged violation of fiduciary duties. He also named his twin brother, Donald, as a defendant in both suits as a trust beneficiary.
Several days before the filing of the first suit, a meeting took place between the plaintiffs attorney, Kenneth Mascagni, and another attorney, Lee H. Ayres, at Ayres’ law office. This meeting on December 2, 2011, became the focus of the motion to disqualify filed by the plaintiff after Ayres was hired by the defendants, Mrs. Keith and Donald, in June 2013 to represent them in the suits brought by the plaintiff. Ayres and the attorney then representing the defendants had filed a motion for the latter to withdraw and for the former to enroll as counsel of record.
LThe parties seem to agree that at the meeting Mascagni sought information from Ayres about interdiction, a field in which Ayres was experienced and esteemed.[1] However, they fail to agree on anything else and completely disagree about the legal implications to be drawn from their meeting. Ayres asserts that he generally acquainted Mascagni — his friend, former neighbor, and former law partner — with the basic tenets of interdiction proceedings, as a favor. He did not bill for the appointment. Mascagni, on the other hand, contends that Ayres was engaged to provide legal services on behalf of the plaintiff and that he expected Ayres to bill for the appointment.
In the motion to disqualify filed on July 16, 2013, the plaintiff alleged that, through his attorney, he had consulted with and shared “confidential information” with Ayres at the December 2011 meeting. He maintained that, as a result of this meeting, a conflict of interest existed which prohibited Ayres from representing Mrs. Keith in the instant proceedings. (Mrs. Keith had already had three different attorneys.) The plaintiff stated that he nei *1205 ther consented to nor waived the conflict of interest and that Ayres’ representation of Mrs. Keith violated Rule 1.9(a) and/or 1.18(b) and (c) of the Louisiana Rules of Professional Conduct. In the motion, the plaintiff alleged that some of the evidence would need to be submitted in camera. A motion to stay proceedings pending resolution of the motion to disqualify was granted on July 22, 2013.
|aOn August 14, 2013, the defendants filed an opposition to the motion to disqualify. Among the attachments to the memorandum were copies of Ayres’ handwritten notes from the December 2011 meeting.[2]
On August 26, 2013, the motion was called in open court following a pretrial conference. Counsel for the plaintiff proposed a modified in camera method whereby the courtroom would be closed; the only non-court personnel allowed to be present would be mover and his counsel. Then mover and mover’s counsel would be excused and the same procedure would be utilized for the defendants. The trial court expressed discomfort with this proposed method, which plaintiffs counsel asserted has been used in federal court. The defendants objected to the proposed procedure. The trial court ordered briefing on the issue and reset the matter for hearing on September 27, 2013.
In a memorandum entitled “Procedure for Consideration of Motion to Disqualify,” the plaintiff stated that the hearing should be limited to an inquiry into matters which are not subject to any privilege.[3] The plaintiff expressed his intention to provide proof of the sequence of events giving rise to the meeting between Mascagni and Ayres and then rely upon a presumption that confidential information was shared. In the event the presumption was not accepted by the trial court, he proposed to file under seal an affidavit by Mascagni. The defendants filed their own memorandum |4on proper procedure in which they urged that the trial court not depart from regular proceedings in open court. They argued that they had the right to hear and cross-examine any witnesses offered by the plaintiff and that their due process rights would be violated by any other procedure.
The parties returned to court on September 27, 2013.[4] The plaintiff immediately moved to file under seal an affidavit from Mascagni detailing the communications he had with Ayres.[5] The plaintiff also objected to introduction of any evidence that delved into attorney-client privileged communications. The trial court denied the motion and then ruled that it would conduct an ordinary, open hearing. However, it directed that any written offerings be placed under seal and that any request for a transcript of the proceedings be approved by the court. The court refused to review Mascagni’s affidavit and allowed it to be filed only under seal as a proffer, subject to review by the court of appeal. The plaintiff objected to the trial *1206 court’s proposed procedures. The defendants vehemently objected to the Mascagni affidavit being placed under seal without them having an opportunity to see it and reserved their right to submit a similar in camera affidavit at a later date. The objections were noted and overruled. Against this contentious pretrial bickering, the evidentiary portion of the hearing began.
| r,Plaintiff s counsel elicitéd testimony from the plaintiff that he was aware that Mascagni was going to meet with another attorney to discuss his possible lawsuit against his mother, that Mascagni was authorized to discuss the matter fully with the second lawyer, and that the plaintiff was willing then and now to pay for services rendered by the second lawyer. When counsel for the defendants attempted to cross-examine the plaintiff, he was instructed by his own counsel not to answer the first question asked of him, as it allegedly implicated the attorney-client privilege. As the hearing became more and more contentious and mired in the possibility of the plaintiff and his attorney being held in contempt, the plaintiff requested a stay in order to take writs to this court. The trial court candidly acknowledged on the record that the plaintiff was being placed in a difficult position and requested “guidance” from the appellate court.
We note that, at that juncture, the trial court did not have the benefit of all of the extensive legal research that has now been provided to this court by the parties in both the writ application and in the voluminous briefs filed after the matter was docketed. The trial court was faced with a motion rarely seen by state court judges, coupled with an unusual factual background. Instead of being provided with concrete examples of how different courts have dealt with similar issues well in advance of the hearing, the trial court was basically told that federal courts employed different procedures. Had the trial court and the parties been provided with all of the research that has been provided to this court, along with the additional jurisprudence that we have found from our own research, we believe the hearing below would have been conducted in a different manner and this matter would have been | firesolved by now. Unfortunately, none of this occurred and this matter is before us.
On October 1, 2018, the trial court signed an order staying the hearing on the motion to disqualify pending this court’s ruling on the application for supervisory writs. On November 14, 2013, this court granted the writ to docket.
ARGUMENTS
The plaintiff characterizes the issues before this court as being a dispute over the applicable burden of proof for disqualifying a lawyer under Rule 1.9(a) of the Louisiana Rules of Professional Conduct and the appropriate manner in which the trial court should receive evidence concerning matters protected by the attorney-client privilege, should the court deem such evidence necessary.
The plaintiff contends that the trial court should utilize a two-step evidentiary process. First, it should receive all non-privileged evidence in open court. The client might be able to carry his burden of proof without revealing privileged information. Second, if nonprivileged evidence is insufficient, the trial court should receive privileged information in camera. Otherwise, the plaintiff would be required either to disclose privileged information to disqualify his former attorney or forgo the disqualification motion altogether.
The defendants, of course, argue that the trial court correctly held that due process required an open court hearing with *1207 normal rules and processes to determine whether an attorney should be disqualified under Rule 1.9. According to the defendants, the method suggested by the plaintiff for 17presentation of evidence lacks due process and fairness for the potentially disqualified attorney. They question the plaintiffs rationale of not revealing information in open court because it is confidential when the plaintiff claims that the information has already been divulged to Ayres.
Additionally, the defendants criticize plaintiffs counsel for instructing the plaintiff to disobey the trial court’s order to answer a cross-examination question about a matter already discussed on direct examination, i.e., whether Mascagni told the plaintiff that he was going downstairs to meet with a lawyer. They further contend that the plaintiff waived attorney-client privilege by testifying on direct examination to facts that could have only been relayed to him by Mascagni.
ATTORNEY-CLIENT PRIVILEGE

Statutory provisions

Rule 1.9(a) of the Rules of Professional Conduct states:
A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
Rule 1.18 of the Rules of Professional Conduct sets forth duties owed to a prospective client and provides:
(a)A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same |sor a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
(1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(ii) written notice is promptly given to the prospective client.
La. C.E. art. 506 codifies the attorney-client privilege in Louisiana and it states, in relevant part:
A. Definitions. As used in this Article:
*1208 (1) “Client” is a person ... to whom professional legal services are rendered by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.
(2) “Representative of the client” is:
(a) A person having authority to obtain professional legal services, or to act on advice so obtained, on behalf of the client.
[[Image here]]
(3) “Lawyer” is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.
(4) “Representative of the lawyer” is a person engaged by the lawyer to assist the lawyer in the lawyer’s rendition of professional legal services.
(5) A communication is “confidential” if it is not intended to be disclosed to persons other than:
(a) Those to whom disclosure is made in furtherance of obtaining or rendering professional legal services for the client.
[[Image here]]
B. General rule of privilege. A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to |9the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:
(1) Between the client or a representative of the client and the client’s lawyer or a representative of the lawyer.
[[Image here]]
(5) Among lawyers and their representatives representing the same client....
[[Image here]]
D. Who may claim privilege. The privilege may be claimed by the client, the client’s agent or legal representative .... The person who was the lawyer or the lawyer’s representative at the time of the communication is presumed to have authority to claim the privilege on behalf of the client, former client, or deceased client.[6]

Jurisprudence

The attorney-client privilege, one of the oldest and most venerated of the common law privileges of confidential communications, serves important interests in our judicial system. See Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); United States v. Edwards, 303 F.3d 606, 618 (5th Cir.2002); Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138, 1142 (La.1987). The purpose of the privilege is to encourage the client to confide fully in his counsel without fear that his disclosures could be used against him by his adversaries. State v. Green, 493 So.2d 1178, 1180 (La.1986).
The existence of an attorney-client relationship turns largely on the client’s subjective belief that it exists. Louisiana State Bar Ass’n v. Bosworth, 481 So.2d 567, 571 (La.1986). However, this subjective belief must be a reasonable one. United States v. Edwards, 39 F.Supp.2d 716, 722 (M.D.La.1999). The existence of the attorney-client relationship is a|inquestion of fact subject to manifest error review. Sherwin-Williams Co. v. First Louisiana Const., Inc., 2004-0133 (La.App. 1st Cir.5/6/05), 915 So.2d 841, *1209 844; Barre v. St. Martin, 93-973 (La.App. 5th Cir.4/26/94), 636 So.2d 1061, 1063, writ denied, 94-1358 (La.9/23/94), 642 So.2d 1288.
As astutely noted by a federal district court in Paul v. Judicial Watch, Inc., 571 F.Supp.2d 17, 20 (D.D.C.2008), there is a “paucity of case law” involving motions to disqualify counsel. Our research indicates very few Louisiana state court cases grappling with this difficult issue. See, e.g., Brasseaux v. Girouard, 214 So.2d 401 (La. App. 3d Cir.1968), writ ref'd, 253 La. 60, 216 So.2d 307 (1968); Farrington v. Law Firm of Sessions, Fishman, 96-1486 (La.2/25/97), 687 So.2d 997; Walker v. State, Dep’t of Transp. & Dev., 2001-2078, 2001-2079 (La.5/14/02), 817 So.2d 57; Jones v. ABC Ins. Co., 13-167 (La.App. 5th Cir.9/24/13), 122 So.3d 608. Unfortunately, none of the Louisiana cases provide guidance on the procedural issues.
A motion to disqualify counsel requires the court to balance several important factors: (1) the right of a party to retain counsel of his choice; and (2) the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F.Supp. 514, 517 (M.D.N.C.1996).
A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he |n seeks to disqualify; and (2) a substantial relationship between the subject matter of the former and present representations. In re Am. Airlines, Inc., 972 F.2d 605, 614 (5th Cir.1992). See Bras-seaux v. Girouard, supra. “Substantially related” has been given a narrow interpretation. Walker v. State, Dep’t of Transp. & Dev., supra.
The party seeking to assert the attorney-client privilege has the burden of proving that the privilege is applicable. State v. Brown, 2012-0626 (La.App. 4th Cir.4/10/13), 115 So.3d 564, 572. The burden of proving disqualification of an attorney rests on the party making the challenge. Walker v. State, Dep’t of Transp. & Dev., supra; State v. Craddock, 2010-1473 (La.App. 1st Cir.3/25/11), 62 So.3d 791, 797, writ denied, 2011-0862 (La.10/21/11), 73 So.3d 380.
A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing. Therefore, notwithstanding the fundamental importance of safeguarding popular confidence in the integrity of the legal system, attorney disqualification is a sanction that should not be imposed cavalierly. United States v. DeCay, 406 F.Supp.2d 679, 683-84 (E.D.La.2005); F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1316 (5th Cir.1995).
Disqualification issues must be decided on a case-by-case basis. Plant Genetic Sys., N.V. v. Ciba Seeds, supra.
The right to urge disqualification of an opposing counsel may be waived by failure to raise the issue early in the proceedings. Brasseaux v. Girouard, supra.
I ^DISCUSSION
The merits of the motion to disqualify are not before us.[7] The only issue is the *1210 propriety of the trial court’s ruling on how the hearing would be conducted.
The defendants argue that anything less than full proceedings in open court violates their rights to due process. We fully recognize that, as a general proposition, most hearings are to be held in an open, contradictory fashion, with in camera hearings being disfavored. This is a result of the due process guarantee of notice and an opportunity to be heard that is found in both the Fourteenth Amendment to the United States Constitution and in Art. I, § 22 of the Louisiana Constitution. However, as discussed below, the courts have recognized that in exceptional circumstances ex parte or in camera procedures are warranted.
Various courts — both federal and state — have utilized different procedures in conducting hearings on motions to disqualify counsel. For example, a “closed” hearing was held in United States v. Edwards, 39 F.Supp.2d13 at 738. Other federal courts have used in camera inspection of documents filed under seal. See Rogers v. Pittston Co., supra; U.S. Football League v. Nat’l Football League, 605 F.Supp. 1448 (S.D.N.Y.-1985). In the Rogers case, the lawyer whose disqualification was sought objected to the procedure, asserting that he could not adequately respond to the sealed documents. The court found that “because the moving party is not required to publicly reveal actual confidences, in camera submission of documents is a recognized way of establishing that the two matters are substantially related.” In the U.S. Football League case, the court issued a confidentiality order with the consent of the parties. Furthermore, all papers related to the motion to disqualify were filed under seal and reviewed in camera. The actual appellate opinion was also sealed, and an alternate abbreviated version which did not reveal any confidential information was published.
In United States v. Uzzi, 549 F.Supp. 979 (S.D.N.Y.1982), the court relied upon affidavits and found in camera testimony unnecessary because the facts were undisputed. In Kaselaan & D’Angelo Assocs., Inc. v. D’Angelo, 144 F.R.D. 235 (D.N.J.1992), submissions by the parties on the motion to disqualify the defendant’s counsel included affidavits filed under seal. In Decora Inc. v. DW Wallcovering, Inc., supra, the court allowed the presentation of ex parte documents and testimony at an in camera hearing to safeguard confidential evidence from disclosure. In weighing the evidence so presented, the court was to take into account the inability of the opposition to challenge it.
*1211 14In United States v. DeCay, supra, all of the documents deemed pertinent by the court, including the attorneys’ office files, were ordered to be produced under seal for in camera inspection by the court.
Louisiana courts have held in camera hearings in cases involving privileged communications. See In re Kohn, 357 So.2d 279 (La.App. 4th Cir.1978); Campo v. Dupre, 470 So.2d 234 (La.App. 4th Cir. 1985). In a different context, addressing expert witness funds for indigent defendants, our Louisiana Supreme Court crafted a procedure for an in camera presentation by the defendant. State v. Touchet, 93-2839 (La.9/6/94), 642 So.2d 1213.[8] Thus, there is precedent in our own state to support the submission of matters in a manner designed to preserve confidentiality, albeit not in the context of a motion to disqualify.
The jurisprudence of other states on procedural devices is instructive. In particular, we note Barragree v. Tri-Cnty. Elec. Co-op., Inc., 263 Kan. 446, 950 P.2d 1351 (1997), in which the Kansas Supreme Court held that “[tjools such as conducting a portion of the hearing out of the presence of the party against whom confidentiality is to be protected or an in camera 1 ^inspection are available to the district court to prevent disclosure of the information to adverse parties and counsel.”
It appears to us that in this case the trial court may have to consider the content of the discussion held between Mascagni and Ayres on December 2, 2011, in order to determine whether Rule 1.9 and/or Rule 1.18 of the Louisiana Rules of Professional Conduct may apply here. This is an unusual case because of the one meeting at which the plaintiff was not even present. We have reviewed the sealed Mascagni affidavit. It described the communication to Ayres of information which arguably could be construed as being confidential and of importance to the litigation. We realize this is only one side and Ayres’ version of what transpired is, of course, unknown.
We find that the trial court erred in requiring that all evidence on the motion to disqualify be submitted in open court. The jurisprudence reviewed above demonstrates a number of other alternatives and methods by which courts have taken evidence while preserving confidences which may fall under the attorney-client privilege.
It is of vital importance that general rules be firmly established when the hearing resumes and that these rules not penalize the plaintiff for asserting his right to the attorney-client privilege.[9] Therefore, *1212 we direct the trial court to take evidence in open court on matters not requiring disclosure of communications arguably protected by the attorney-client privilege. The trial court is further directed to consider evidence that may be protected launder the attorney-client privilege by methods outlined above, including, but not limited to: (1)sealed affidavits; (2) in camera inspection of documents; (3) conducting portions of the hearing outside the presence of the other side; and (4) sealing the record or portions thereof. In weighing this evidence, the court shall, of course, consider the inability of the opposite side to challenge it. If necessary, the court can question the witnesses and have the attorneys submit questions they believe should be posed to the witnesses in order to produce pertinent information helpful to the court’s determination. At the conclusion of the proceedings, the trial court shall determine whether the plaintiff has carried his burden of proof and rule accordingly.
CONCLUSION
We make the previously granted writ peremptory, reverse the trial court ruling which required that all evidence on the motion to disqualify be presented in open court, and remand the matter to the trial court to resume |17the hearing in accordance with this opinion. Costs are assessed equally to both sides.
WRIT MADE PEREMPTORY; REVERSED AND REMANDED WITH INSTRUCTIONS.

. Ayres was one of the attorneys in some very protracted litigation described in Skannal v. Bamburg, 44,820 (La.App.2d Cir.1/27/10), 33 So.3d 227, writ denied, 2010-0707 (La.5/28/10), 36 So.3d 254, which was tried over a 16-day period in the 26th Judicial District.

. The first two pages of Ayres' notes pertain to the law of interdiction. On the third page, he has some very brief information about the Keiths, including statements that the plaintiff does not get along with either his mother or twin brother.

. Although this memorandum is not found in the appellate record, an unsigned copy of it is contained in the writ application.

. As potential witnesses, Ayres and Mascagni were each accompanied by another attorney from their respective firms.

. In his written motion to file under seal, the plaintiff cited Decora Inc. v. DW Wallcovering, Inc., 899 F.Supp. 132 (S.D.N.Y.1995), and Rogers v. Pittston Co., 800 F.Supp. 350 (W.D.Va.1992), aff'd, 996 F.2d 1212 (4th Cir.1993), which are discussed infra.

. The article also provides for exceptions to the privilege, none of which are applicable in the instant case.

. Although scant evidence was adduced before the hearing was terminated, the parties’ briefs contain their diametrically opposed versions of what transpired in the meeting.
*1210 The plaintiff contends that Mascagni informed Ayres of the names of the parties to ensure there was no conflict of interest and quoted him an hourly rate. After Ayres did not object to the parties or the rate, Mascagni proceeded with the understanding that Ayres was providing legal advice to the plaintiff. The plaintiff contends that Mascagni shared with Ayres information received in confidence from his client, as well as Mascagni’s perceptions and general strategy. Due to the legal advice received from Ayres, the plaintiff did not pursue a challenge to his mother’s capacity. Mascagni asked Ayres to send him a bill.
The defendants assert that Mascagni provided no confidential information to Ayres during the meeting. According to Ayres’ account, Mascagni telephoned him asking for information about interdiction proceedings. They later met for about 30 minutes at which time Ayres gave Mascagni procedural and substantive information about interdiction. While Mascagni mentioned the names of his client and his mother, Ayres did not know them and he had no contact with the client. Ayres contends that he was even unaware that any trust was involved until he was hired by the defendants. Furthermore, Ayres did not open a file or bill anyone in connection with the meeting.
What the evidence eventually will show is yet to be determined.

. In Touchet, the court outlined its procedure in detail:
To recapitulate our holding in this case, an indigent defendant may file a motion for expert funding ex parte. Notice of the filing of the motion should be given to the state, which may file an opposition to the hearing being held ex parte and/or to the request for funding. The trial court should first determine, in camera, either on the face of the allegations of the motion or upon taking evidence at an ex parte hearing, whether the defendant would be prejudiced by a disclosure of his defense at a contradictory hearing. If so, then the hearing on expert funding should continue ex parte. If not, then the hearing should be held contradictorily with the District Attorney. If either side seeks appellate review of a ruling as to the ex parte nature of the hearing, the motion and other proceedings to this point should remain under seal until the appellate review is completed, and thereafter if the ruling is in favor of an ex parte hearing.

. We find no merit to the defendants’ argument that the plaintiff has somehow irrevocably waived his alleged attorney-client privilege by testifying that Mascagni told him that he was going to the attorney’s office downstairs. This testimony did not pertain to any subject matter of the two suits that were filed. The hearing was recessed at this point.