DENNIS, Justice.*
The primary issue in this case is whether the Commissioner of Insurance, as liquidator of a domestic insurance company, has the power to waive the insurance company’s attorney-client privilege with respect to communications that took place before the insurance company was placed in liquidation.
This case arises out of the liquidation of Automotive Casualty Insurance Co., a domestic insurer, pursuant to La.R.S. 22:736 et seq. On September 1, 1992, the district court entered an order directing rehabilitation of the insurer and authorizing the Commissioner of Insurance to conduct the business of the insurer and take necessary steps to remove the causes and conditions for such proceedings. La.R.S. 22:736(A). On January 20, 1993 the Commissioner found that further efforts to rehabilitate the insurer would be futile and would result in further loss to the creditors, policyholders, and public and applied to the court in the same proceeding for an order directing the liqui *1165 dation of the insurer. La.R.S. 22:736(C). Accordingly, the district court entered an order directing liquidation, and the Commissioner proceeded to liquidate the property, business, and affairs of the insurer. La.R.S. 22:737(A).
The Commissioner requested on March 25, 1993 that Deutseh, Kerrigan & Stiles (DKS), the law firm that had rendered legal advice to the insurer regarding regulatory matters prior to liquidation, turn over files and documents related to services performed for the insurer. DKS refused because Frank Adolph, a former executive officer of the insurer who had engaged the law firm for the insurer, declined to waive the attorney-client privilege.
The Commissioner moved the district court for an order directing DKS to turn over the files. After a contradictory hearing, the district court, on June 25, 1993, issued such an order. The court of appeal stayed the execution of the order but ultimately recalled its stay order and denied a writ application filed by Frank Adolph, the former executive officer of the insurer. We stayed the district court’s order and granted Mr. Adolph’s application for certiorari to consider whether the Commissioner of Insurance has the power to waive the attorney-client privilege of a domestic insurer in liquidation with respect to communications that occurred before the filing of the liquidation petition.
The Louisiana Code of Evidence, Chapter 5, Articles 501-513, sets forth our law on testimonial privileges. The attorney-client privilege authorizes a “client” to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client when the communication is between the client or a representative of the client and the client’s lawyer or a representative of the lawyer. La.Code Evid. art. 506(B)(1) (West Supp.1994). A “client” includes any person, including a corporation, to whom professional legal services are rendered by a lawyer, or who consults a lawyer with a view to obtaining professional legal services. La.Code Evid. art. 506(A)(1). The privilege may be claimed by the client, the client’s agent or legal representative, or the successor, trustee, or similar representative of a client that is a corporation, partnership, unincorporated association, or other organization, whether or not in existence. La.Code Evid. art. 506(D). “Legal representative” conforms with the definition of that term in Louisiana Code of Civil Procedure article 5251(10), which provides that “ ‘Legal representative’ includes an administrator, provisional administrator, administrator of a vacant succession, executor, dative testamentary executor, tutor, administrator of the estate of a minor child, curator, receiver, liquidator, trustee, and any officer appointed by a court to administer an estate under its jurisdiction.” (emphasis added). See La.Code Evid. art. 506, comment (k). A person upon whom the law confers a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. La.Code Evid. art. 502(A).
The Code of Evidence precepts govern the waiver of the privilege with respect to the pre-liquidation confidential communications even though the claim of privilege may have been established under prior law. Louisiana Acts 1992, No. 376, Section 8 provides:
This Act shall be effective on January 1, 1993. However, communications made pri- or to January 1, 1993, which were subject to a valid claim of privilege under prior law, retain their privileged character unless waived.
Applying the precepts of the Code of Evidence, we conclude that the Commissioner of Insurance has the power to waive the attorney-client privilege with respect to the confidential communications at issue in the present case. It is undisputed that the insurance company is the person or entity to which professional legal services were rendered by the law firm. Therefore, the insurance company is the holder of the attorney-client privilege. As liquidator of the company, the Commissioner of Insurance is its legal representative and may act for the company in claiming the attorney-client privilege held by the company. By the same token, *1166 the Commissioner as the company’s legal representative may act for the company in waiving the privilege or in consenting to the disclosure of the privileged matter.
The arguments of Mr. Adolph, the insurer’s former executive officer, that he may continue to claim the attorney-client privilege for the insurer are without merit. When control of a corporation passes to new management, the authority to assert and waive the corporation’s attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties. Commodity Futures Trading Comm’n v. Weintraub, 471 U.S. 343, 349, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985); In re O.P.M Leasing Sews., Inc., 670 F.2d 388 (2d Cir.1982); Citibank, N.A. v. Andros, 666 F.2d 1192 (8th Cir.1981); In re Grand Jury Investigation, 599 F.2d 1224, 1236 (3rd Cir.1979); Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 611, n. 5 (8th Cir.1978).
Mr. Adolph also contends that giving the liquidator control over the attorney-client privilege will have an undesirable chilling effect on attorney-client communications because corporate managers will be wary of speaking freely with corporate counsel if their communications might subsequently be disclosed due to liquidation. On the other hand, if the former management of a corporation were allowed to exercise the company’s attorney-client privilege, it would tend to frustrate the liquidator’s efforts in seeking to maximize the value of the corporate assets, investigate the conduct of prior management, and uncover causes of action against the former officers and directors. Cf. Weintraub, 471 U.S. at 353, 105 S.Ct. at 1993. Evidently, the Code of Evidence resolves this conflict of interests by authorizing the liquidator as legal representative of the corporation to claim and waive the corporation’s attorney-client privilege. Moreover, the chilling effect is no greater here than in the ease of a solvent corporation, where individual officers and directors always run the risk that successor management might waive the corporation’s attorney-client privilege with respect to the prior management’s communications with counsel. Weintraub, 471 U.S. at 357, 105 S.Ct. at 1995.
The decisions cited by the former executive officer do not support Mr. Adolph’s claim that he is the holder of the attorney-client privilege with respect to pre-liquidation confidential communications between the insurer and DKS. In Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir.1970), the Court of Appeals held that the management of a corporation is not barred from asserting the corporation’s attorney-client privilege merely because stockholders demand access to the confidential information, but that where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show that there is good cause why the corporate management cannot claim the privilege in that particular ease. Ward v. Succession of Freeman, 854 F.2d 780 (5th Cir.1988), applied the principles expressed in Garner and concluded that the shareholders had failed to show good cause to prevent management from invoking the corporation’s attorney-client privilege. The court recognized in Garner and Ward that in the absence of such a showing of good cause by stockholders or of another exception, such as those provided for communications in contemplation of a crime or fraud, and for communications to a joint attorney, management may claim the privilege for the corporation. In the present case, none of these exceptions is present. In fact, the shoe is on the other foot. The current management, the Commissioner as liquidator and legal representative, chooses to waive or not to claim the privilege in order to facilitate his efforts to obtain information leading to possible injurious actions by former management, and the ousted former management is not .authorized to invoke the *1167 privilege to shield the information from the Commissioner’s inquiry.
Mr. Adolph also incorrectly relies on Federal Deposit Insurance Corp. v. Amundson, 682 F.Supp. 981 (D.Minn.1988), in which the court denied a motion filed by the FDIC (in its corporate capacity as purchaser of certain assets of a faded bank) seeking to disqualify an attorney, who had formerly represented the failed bank in its dealings with the Comptroller of the Currency, from representing a former executive of the bank. The case is distinguishable from Weintraub, and the present case, because it dealt not with the waiver or invocation of the attorney client privilege, but rather with disqualifying a party’s chosen counsel, which involves different considerations, not the least of which is a party’s strong interest in employing the counsel of his choice. Further, as pointed out by the court in Amundson, the alleged conflict of interest being asserted by the FDIC was not being done as a benefit to the estate, but rather was being wielded “as a sword to drive into its opponent.” Amund-son, 682 F.Supp. at 987. In the present case however, the Commissioner is choosing to waive or not to assert the attorney-client privilege in order to discover and pursue possible claims and thereby benefit the insolvent estate, and it is a former executive who is asserting the corporation’s attorney-client privilege. Were the Commissioner attempting to prevent DKS from representing Mr. Adolph in the future, perhaps Amundson might be pertinent, but it is not pertinent to the present case.
For the foregoing reasons, we conclude that the Commissioner of Insurance, as liquidator of the insurance corporation, has the power to waive the corporation’s attorney-client privilege with respect to pre-liquidation communications. Therefore, the Commissioner, in his capacity as liquidator, properly waived the insurance corporation’s privilege in this case.
Additionally, Mr. Adolph contends that portions of the DKS files contain attorneys’ work product and are therefore privileged under the work product rule. La.Code Evid. art. 509 provides that “[njothing in this Chapter shall be construed as derogating from the protection afforded by the rules relating to work product.” La.Code Civ.P. art. 1424, the civil work product rule, in pertinent part, provides:
Art. 1424. Scope of discovery; trial preparation; materials
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert.
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
Article 1424 cannot be invoked by Mr. Adolph or DKS to prevent the Commissioner, as liquidator and legal representative of the insurance corporation, from obtaining the DKS files simply because they contain the law firm’s work product. It is undisputed that any such work product was prepared in connection with professional legal services rendered to the insurance corporation, as the client, by a lawyer or lawyers acting for the DKS law firm. Mr. Adolph cannot claim the privilege for the company; he is no longer an executive officer and therefore cannot act for the corporation. He cannot claim the privilege individually because he is not the client for whom the legal work was performed. DKS cannot claim the work product privilege against the Commissioner because the Commissioner is acting for the client corporation as its legal representative and therefore, in effect, as its management. Although a lawyer may claim the work product privilege in opposition to third persons, he cannot invoke the privilege against his own client, because the client is the ultimate and primary beneficiary of the privilege. An attorney or expert cannot withhold a work product and thereby cause possible adverse affect to the legal rights of a client or employer simply because it was prepared or obtained in behalf of the *1168 client in anticipation of litigation or in preparation for trial. Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125 (La.1983); Cousins v. State Farm Mut. Auto. Ins. Co., 258 So.2d 629 (La.App. 1st Cir.1972). Cf. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).
The work product case cited by Mr. Adolph does not support his argument. In re International Sys. & Controls Corp., 693 F.2d 1235 (5th Cir.1982), held that corporate management could invoke the corporation’s work product privilege against shareholders seeking, in a derivative suit, to discover accounting documents constituting work product of the corporation. Counsel’s brief is inaccurate in suggesting that the opinion implies that an ousted corporate executive may claim the work product privilege simply because his personal interest is adverse to that of the corporation or its new management.
Consequently, for the .reasons assigned, Mr. Adolph, the former executive officer of the corporation, and the DKS law firm, the former attorneys for the corporation, may not prevent the DKS law firm from complying with the trial court’s order by asserting in opposition thereto the corporation’s attorney-client privilege or work product immunity. The judgment of the trial court is accordingly affirmed.
AFFIRMED.

 Watson, J., not on the panel. Rule IV,- Part 2, § 3.