LOLLEY, J.
I iThis application for supervisory review arises from the 26th Judicial District Court, Parish of Bossier, State of Louisiana. The Bridlington Company, L.L.C. (“Bridlington”), seeks review of the trial court’s denial of its motion to compel discovery. This writ was granted specifically to review the applicability of La. C.E. art. 506(C)(a) and La. R.S. 12:1314 to the facts in this matter. After further review, and for the following reasons, we recall the writ. We affirm the trial court’s ruling, and remand this matter for further proceedings.
FACTS
Southern Disposal Services, L.L.C. (“Southern Disposal”), is composed of four members: Donald E. Jones; William J. Jones; C&C Management Enterprises, L.L.C. (whose only registered officer is Cecil Kenneth Covington); and Bridlington (whose sole member is David Shinpoch). Another named defendant, Industrial Landfill Management, L.L.C. (“Industrial Landfill”), is a wholly owned subsidiary of Southern Disposal. Coving-ton is currently, and was at the time this dispute arose, manager of Southern Disposal. Shinpoch formerly managed Southern Disposal, previous to Covington. Pleadings filed in this matter allege various abuses of the managerial role by both Covington and Shinpoch. However, those allegations are not discussed herein, because only the privileged nature of communications between Southern Disposal and its former attorney, Jeff R. Thompson, are at issue in this application.
Originally, on December 9, 2011, Bri-dlington filed a petition alleging that as a member of Southern Disposal it is entitled to inspect and copy certain records, and it followed the statutory procedure in requesting to do |aso. Bridlington requested to inspect Southern Disposal’s 2009 and 2010 tax returns, along with any financial records from those years. Specifically, Bri-dlington requested a list of records which included accounts payable and receivable, all invoices, and current balance sheets for both Southern Disposal and Industrial Landfill. Southern Disposal and Industrial Landfill sought a protective order claiming the customer identification information sought by Bridlington was beyond the scope of what a member of a LLC was entitled to, and further, was only sought by Bridlington for use as a business competitor, making this an unreasonable request.
At that time, Bridlington claimed these documents were necessary to confirm that the acquisition of Southern Disposal by Charles R. Keen was a transaction con *222 ducted at “arm’s length” and in accordance with Southern Disposal’s operating agreement. It also alleged suspicions of self-dealing. On August 13, 2012, the trial court denied Southern Disposal’s protective order, and ruled in favor of Bridlington, ordering Southern Disposal and Industrial Landfill to produce the requested information.
In 2015, Southern Disposal incurred expenses in excess of its income, and a “cash call” was made to all members. Bridlington was the only member not to contribute a pro rata share of the sum demanded, and its ownership share was diminished pursuant to Southern Disposal’s operating agreement. Subsequently, Southern Disposal’s assets were sold. Bridlington received its pro rata share of the sale price, based upon its diminished ownership percentage.
On March 2, 2015, Bridlington filed another petition within the original suit, alleging that the other members of Southern Disposal conspired to use the “cash call” as a fraudulent scheme designed to diminish laBridlington’s ownership interest in Southern Disposal and reduce its share of Southern Disposal’s eventual sale price. Bridlington asserted that the “cash call” was fraudulently conducted, and in violation of Southern Disposal’s operating agreement, because the other members used money procured through loans to meet their obligation in the “cash call.” During discovery, in addition to requesting all financial records and all records related to the management of Southern Disposal, Bridlington also requested all communications between Southern Disposal and any accountant or attorney. This request for production included a long list of financial documents for a time period of 2007 to 2014.
When its request was only partially complied with, Bridlington filed a motion to compel discovery, seeking an order requiring Southern Disposal to produce the requested communications, and requesting a subpoena duces tecum be issued to Thompson, Southern Disposal’s attorney. Southern Disposal responded by filing a motion for protective order, asserting the attorney-client privilege applied to all communication between it and its attorney. It also filed a dilatory exception claiming the petition was vague and ambiguous, accompanied by a motion to quash Bridlington’s 2015 petition. In order to determine which information Bridlington was entitled to, the trial court ordered Southern Disposal to file a privilege log and Bridlington to file a brief in support of its motion to compel discovery. Eventually, the motion to compel came before the trial court for a hearing, and it determined that Southern Disposal had complied with Bridlington’s request, with the exception of the documents for which Southern Disposal claimed privilege. The trial court took the matter under advisement, fallowing Bri-dlington more time to file any additional pleadings and Southern Disposal a period to file any response.
Subsequently, the trial court conducted an in camera inspection of the requested documents, and consequently, denied Bri-dlington’s motion to compel discovery, finding that all the requested communications between Southern Disposal and its attorney were privileged. The trial court further ruled that Bridlington would not be permitted to take the deposition of Thompson in order to acquire the information contained in the privileged communications. While the fraud allegations are still pending before the trial court, we now review the trial court’s ruling on Bridling-ton’s motion to compel discovery.
DISCUSSION
In its writ application, Bridlington sets forth three assignments of error for re *223 view.- Primarily, Bridlington argues the trial court erred in holding that the attorney-client privilege applies here. Next, Bri-dlington argues that if the attorney-client privilege does apply in this instance, the trial court erred in not finding an exception exists. Bridlington contends that it made a factual showing that the communications between Southern Disposal and Thompson were made in furtherance of a fraudulent scheme to deprive Bridlington of its ownership interest in Southern Disposal. It specifically argues the following exceptions apply here to vitiate privilege: the commission of a crime or fraud; the breach of duty by an attorney; common interests between clients; and, the identity of a client. Finally, Bridlington asserts the trial court erred in not allowing it to take discovery by deposition and request for production of documents from Thompson.
IsThe trial court has broad discretion in regulating pretrial discovery, and its decision will not be disturbed on appeal absent a clear abuse of that discretion. Bell v. Treasure Chest Casino, L.L.C., 2006-1538 (La. 02/22/07), 950 So.2d 654; H.D. Graphics, L.L.C. v. It’s Permanent, L.L.C., 49,405 (La.App. 2d Cir. 10/01/14), 150 So.3d 936, 941. That discretion may be abused when the trial court denies a motion to compel which seeks information that is properly discoverable, especially where the examination of the requested information may be the only means by which a party can defend the claims against it. H.D. Graphics, supra.
Louisiana C.E. art. 506(B) provides that a client has a privilege to refuse to disclose or prevent another from disclosing any confidential communication made for the purpose of facilitating the rendition of professional legal services to the client. Keith v. Keith, 48,919 (La.App. 2d Cir. 05/15/14), 140 So.3d 1202,1208. The purpose of the privilege is to encourage the client to confide fully in his counsel without fear that his disclosures could be used against him by his adversaries. Id. The party seeking to assert the attorney-client privilege has the burden of proving that the privilege is applicable. Id. at 1209.
In order to vitiate the attorney-client privilege, the trial court must make a finding that the attorney-client relationship was intended to further continuing or future criminal or fraudulent activity. Arabic v. CITGO Petroleum Corp., 2009-0569 (La. 05/15/09), 8 So.3d 558, 559; State v. Taylor, 502 So.2d 537 (La. 1987). The party challenging the privilege must (1) make an independent prima facie case that a crime has been committed, and (2) then demonstrate that the privileged information bears a relationship to the alleged crime or fraud. Cleco Corp. v. Sansing, 2009-0806 (La. | ,05/15/09), 8 So.3d 555, 556. The trial court must make specific findings regarding the intention to further fraudulent or criminal activity in order to determine if the document in question receives protection. Id.
The statutory definition of a “client” includes a corporation or partnership “to whom professional legal services are rendered by a lawyer.” La. C.E. art. 506(A)(1). When control of a corporation passes to new management, authority to assert or waive the attorney-client privilege also passes to the new management. Brown v. Car Ins. Co., 1993-2372 (La. 04/11/94), 634 So.2d 1163, 1166. Former managers may not assert or waive the privilege, even as to statements they may have made to counsel concerning matters within the scope of their corporate duties. Id.
The statutory exceptions to the attorney-client privilege set forth by La. C.E. 506(C), in pertinent part, are as follows:
*224 There is no privilege under this Article as to a communication:
(l)(a) If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client or his representative knew or reasonably should have known to be a crime or fraud.
(b) Made in furtherance of a crime or fraud.
# * ⅜ ⅜
(5) Which is relevant to a matter of common interest between or among two or more clients if the communication was made by any of them or their representative to a lawyer or his representative retained or consulted in common, when subsequently offered by one client against the other in a civil action.
(6) Concerning the identity of the lawyer’s client or his representative, unless disclosure of the identity by the lawyer or his representative would reveal either the reason for which legal services were sought or a communication which is otherwise privileged under this Article.
|7In support of its assignments of error, Bridlington argues that the trial court erred in its failure to recognize that the information sought was discoverable to all members involved in this litigation under Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970). Bridlington further argues the Louisiana Supreme Court in Brown, supra, adopted a nine-point test set out by Gamer, supra, for determining when attorney-client privilege should, be denied. We disagree with Bridlington’s interpretation of the jurisprudence offered and its argument for application on" these facts.
In Brown, supra, the Louisiana Supreme Court held that the Commissioner of Insurance, as liquidator of an insurance company, was the current manager of the company and, thus, had the power to waive the company’s attorney-client privilege with respect to communications that occurred before the company was placed in liquidation. The Louisiana Supreme Court stated:
In Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir.1970), the Court of Appeals held that the management of a corporation is not barred from asserting the corporation’s attorney-client privilege merely because stockholders demand access to the confidential information, but that where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show that there is good cause why the corporate management cannot claim the privilege in that particular case. Ward v. Succession of Freeman, 854 F.2d 780 (5th Cir. 1988), applied the principles expressed in Gamer and concluded that the shareholders had failed to show good cause to prevent management from invoking the corporation’s attorney-client privilege. The court recognized in Gamer and Ward that in the absence of such a showing of good cause by stockholders or of another exception, such as those provided for communications in contemplation of a crime or fraud, and for communications to a joint attorney, management may claim the privilege for the corporation.
| ¿Brown, supra, at 1166. The jurisprudence cited by Bridlington held that the attorney-client privilege is subject to the right of the stockholders to show cause why it should not be .invoked by corporate management in a particular circumstance.[1] The *225 “Gamer test” is essentially a balancing test, developed in the federal court, requiring the trial court to weigh the stockholders’ interests in the information claimed to be privileged against the interest of the company in keeping attorney-client communications confidential and undiscovera-ble. However, Louisiana law provides a framework for determining when attorney-client privilege is applicable to information and what exceptions exist; therefore, it is unnecessary and improper to apply the balancing test suggested by Bridlington. See La. C.E. 506; La. C.C.P. 1424. Further, the Gamer holding allows for managers to claim privilege on behalf of a corporation, subject to the stockholders’ right to have an opportunity to show cause why privilege should not apply.[2]
Here, the trial court issued written reasons for its ruling, stating:
In reviewing the record, together with the in camera inspection of the privilege log, there exists nothing before this court that would, at this point in time, establish a prima facie showing of fraud, let alone a showing of fraud supported by a preponderance of evidence. In fact, the only thing before this court at the present time is unsubstantiated allegations of the Plaintiff claiming some scheme to diminish the interest of plaintiff in Southern Disposal.
Further, the trial court considered the breach of duty exception, stating that no showing was made to justify the exception. Thompson has never been alleged to represent Bridlington, and at all relevant times he represented only Southern Disposal. In Cleco Corp., supra, the Louisiana Supreme Court |9stated the trial court must make specific findings regarding the fraud exception to attorney-client privilege, which were not found by the trial court under these facts.
Notably, La. R.S. 12:1314 provides that managers and members of an LLC have fiduciary duties to one another. It also provides protection to managers of an LLC in good faith reliance upon the LLC’s records or the advice of the LLC’s attorney. Bridlington has produced no evidence that the “cash call” made by Covington, as manager of Southern Disposal, was unnecessary or made in bad faith. Instead, Bri-dlington continues to allege that the communications between Southern Disposal and Thompson will prove a conspiracy against Bridlington. It argues that, regardless of the advice given by Thompson to Covington, either in favor of the actions taken by Southern Disposal or against it, these communications will prove a conspiracy. Bridlington asserts that if Thompson advised “the action taken” (i.e., the “cash call”) then he is part of the conspiracy and liable. On the other hand, Bridlington argues, if Thompson advised against a “cash call” then Covington, as manager, violated his fiduciary duty to Bridlington, as member. Bridlington fails to acknowledge the possibility that the “cash call” was made in good faith and in the best interest of Southern Disposal and its members, and presents no evidence to contradict such a determination.
Here, Bridlington was allowed an opportunity to show cause why the attorney-client privilege should not apply. It merely suggested application of Gamer, and gave no other support for its assertion that the communications between Southern Disposal and Thompson would prove fraud was committed. The trial court found that Bri-dlington failed to prove |inthat any of the exceptions provided by the Louisiana Code of Evidence exist in this case, specifically, *226 finding Bridlington failed to make even a prima facie showing that the communications requested were sought to enable anyone at Southern Disposal to commit what they knew to be fraud. Bridlington also failed to show that Thompson owed or breached any duty to it. Additionally, the trial court carefully reviewed the contested communications in camera and determined that not only does the attorney-client privilege apply, but no exception exists. Therefore, we find the trial court did not abuse its discretion in ruling to deny Bridlington’s motion to compel, and in disallowing Bridlington to take Thompson’s deposition in an attempt to circumvent its ruling. These assignments of error have no merit.
CONCLUSION
For the foregoing reasons, we recall the writ previously granted, affirm the trial court’s ruling denying Bridlington’s motion to compel discovery, and remand this matter for further proceedings. All costs associated with this writ for review are cast to The Bridlington Company, L.L.C.
WRIT RECALLED; REMANDED FOR FURTHER PROCEEDINGS.
GARRETT, J., concurs with written reasons.

. At all relevant times, Covington was manager of Southern Disposal,

. Bridlington argues Gamer holds that courts should favor stockholders over corporations in disputes concerning the attorney-client privilege, but that is a misinterpretation.