NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CW 21-96

JOHN SILVETTI, II

VERSUS

GEICO CASUALTY COMPANY, ET AL.

**********

ON SUPERVISORY WRIT FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2019-7544
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Billy H. Ezell, Candyce G. Perret, and Sharon Darville Wilson, Judges.

REVERSED IN PART; AFFIRMED IN PART; AND
REMANDED FOR FURTHER PROCEEDINGS.

**David Charles Laborde**
**Mary Katherine Cryar**
**Laborde Earles Law Firm, LLC**
**P. O. Box 80098**
**Lafayette, LA 70598-0098**
**(337) 261-2617**
**COUNSEL FOR PLAINTIFF APPLICANT:**
    **John Silvetti, II**

**Lyon H. Garrison**
**Kevin F. Truxillo**
**J. Reed Poole, Jr.**
**Grrison, Yount, Forte & Mulcahy, LLC**
**909 Poydras Street, Suite 1800**
**New Orleans, LA 70112**
**(504) 527-0680**
**COUNSEL FOR DEFENDANT RESPONDENT:**
    **James River Insurance Company**

**PERRET, Judge.**

Plaintiff-Applicant, John Silvetti, II, seeks supervisory writs from the trial court's judgment granting Defendant-Respondent's, James River Insurance Company ("James River"), Motion for Protective Order after an *in camera* review of discovery documents at issue. After reviewing the discovery documents *in camera*, we hereby reverse the trial court's judgment in part, and affirm the judgment in part.

## STATEMENT OF THE CASE

Mr. Silvetti, while employed by Uber Technologies, Inc., was involved in an automobile collision on December 8, 2018, with Douglas Harper. Mr. Silvetti was operating his vehicle westbound on Derany Lane and was attempting to make a left turn from Derany Lane onto South College Road. Mr. Harper was operating his vehicle eastbound on South Arlington Drive, on the opposite side of South College Road from Mr. Silvetti, and was attempting to make a left turn from South Arlington Drive onto South College Road. Mr. Silvetti alleges that after he began his left turn, Mr. Harper attempted his left turn and suddenly collided with Mr. Silvetti's vehicle. Mr. Silvetti sustained bodily injuries from the collision.

Mr. Silvetti filed a Petition for Damages on December 3, 2019, naming several defendants, including James River—the uninsured/underinsured motorist insurance carrier of his employer, Uber Technologies, Inc. Mr. Silvetti alleged that Mr. Harper was an uninsured or underinsured motorist at the time of the accident and that he provided James River with satisfactory proof of loss of his damages/injuries. Thereafter, Mr. Silvetti claims James River acted arbitrarily and capriciously by failing to fulfill its duty under the UM policy to tender Mr. Silvetti

funds and breached its duty of good faith and fair dealing, subjecting itself to penalties and attorney's fees pursuant to La.R.S. 22:1892.[1]

Around February 5, 2020, Mr. Silvetti propounded discovery on James River seeking information related to his bad faith claim. In addition to responding to the discovery, James River filed a Motion for Protective Order on September 3, 2020, seeking to protect the disclosure of certain documents enumerated in an attached Privilege Log. Specifically, James River asserted "Propriety and Confidential Claims Information," "Work Product Doctrine," and "Attorney-Client" privileges. Mr. Silvetti opposed the motion and argued that the privileges asserted did not apply to the documents in the Privilege Log, that the documents are contained only in James River's claim file, and that the information is not obtainable from any other source.

After a hearing on the motion, the trial court ordered an *in camera* inspection of the documents. On December 10, 2020, the trial court issued a Ruling on *In Camera* Inspection wherein the court concluded that all documents reviewed fell within a valid work product/anticipation of litigation claim privilege, apart from some notes, which were identified but not specifically set forth in the judgment.

Mr. Silvetti sought supervisory relief and alleged that the documents enumerated in the Privilege Log are not protected by the work product/anticipation of litigation privilege and, if the documents are protected, "shielding those documents from discovery is still improper under *Hodges* [*v. Southern Farm Bureau Casualty Insurance Co.*, 433 So.2d 125 (La.1983)] because Plaintiff's case

---

[1] James River did tender $85,000.00 to Mr. Silvetti on August 19, 2020.

will be prejudiced without them and the substantial equivalent cannot be obtained from any other source." Plaintiff also asserted that James River's answers to several interrogatories were deficient. Mr. Silvetti requested that the trial court's ruling be reversed, and an order issued compelling James River to produce the Privilege Log documents. Mr. Silvetti additionally requested that James River be ordered to produce its claims processing procedures manual and to fully respond to interrogatories.

On May 11, 2021, this court granted the writ as to the documents enumerated in the privilege log, denied the writ as to the issues raised regarding the production of James River's claims procedure manual and answers to interrogatories, and ordered the trial court to provide the discovery documents reviewed *in camera* for an *in camera* review by this court.

This court has now reviewed the Privilege Log documents and finds that the trial court erred in granting the protective order as to all of the documents enumerated in the Privilege Log.

## LAW AND DISCUSSION

Regarding the standard of review of discovery issues, this court recently stated:

> It is well established that trial courts are afforded broad discretion when regulating pre-trial discovery, which will not be disturbed absent a clear abuse of discretion. *Moak v. Illinois Cent. R. Co.*, 631 So.2d 401, 406 (La. 1994). "Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review." *Louisiana Mun. Ass'n v. State*, 04-227, p. 35 (La. 1/19/05), 893 So.2d 809, 836.

*Gray v. State Farm Mut. Auto. Ins. Co.*, 20-407, p. 4 (La. App. 3 Cir. 2/3/21), 311 So.3d 490, 493. "Discovery statutes are to be liberally and broadly construed to achieve their intended objectives. In determining whether the trial court erred,

[courts of appeal] must balance the information sought in light of the factual issues involved and the hardships that would be caused by the court's order." *Lehmann v. Am. S. Home Ins. Co.*, 615 So.2d 923, 925-96 (La.App. 1 Cir.), *writ denied*, 617 So.2d 913 (La. 1993).

The scope of discovery is provided for in La.Code Civ.P. art. 1422:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This court in *Gray*, 311 So.3d at 493-94, further explained "that the scope of discovery is broad and that privileges, which are in derogation of the broad exchange of facts, are to be construed strictly. *Gauthreaux v. Frank*, 95-1033 (La. 6/16/95), 656 So.2d 634; *Smith v. Lincoln Gen'l Hosp.*, 605 So.2d 1347 (La.1992)."

When a party pleads a privilege to exclude documents from discovery, that party bears the burden of proving that the privilege applies. *Gray*, 311 So.3d 490. Thereafter, the adverse party bears the burden of proving that the privilege is not applicable or that there is an exception to the privilege. *See generally, Bridlington Co., L.L.C. v. S. Disposal Servs., L.L.C.*, 51, 138 (La.App. 2 Cir. 2/15/17), 216 So.3d 219; *Broussard v. State Farm Mut. Auto. Ins. Co.*, 519 So.2d 136 (La.1988); *Hicks v. Somers*, 567 So.2d 1137 (La.App. 5 Cir. 1990). In the current case, James River pled several privileges for various documents listed in its Privilege Log. The

trial court found that the "work product/anticipation of litigation" privilege applied to all the enumerated documents.

"In order for documents to be subject to discovery, they must be relevant, and if prepared in anticipation of litigation, then they may only be discovered if their non-production would unfairly prejudice the party requesting them." *Vincent v. DS Servs. of Am.*, 17-492, p. 2 (La.App. 3 Cir. 1/4/18), 237 So.3d 53, 56. Specifically, La.Code Civ.P. art. 1424(A) documents the exception to discovery for materials prepared in anticipation of litigation:

> The court shall not order the production or inspection of any writing, or electronically stored information, obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. Except as otherwise provided in Article 1425(E)(1), the court shall not order the production or inspection of any part of the writing, or electronically stored information, that reflects the mental impressions, conclusions, opinions, or theories of an attorney.

As to relevance, we briefly note that the information in James River's claim file is, generally, relevant to Mr. Silvetti's claim. In an action against a UM insurer for the arbitrary and capricious refusal to pay a claim, "[a]ny document which reflects the knowledge of the claim due and actions or inactions taken or discussed by [the insurer] or its attorney during the pendency of the suit for damages would be relevant to the subject matter of the action[.]" *Cantrelle Fence and Supply Co., Inc. v. Allstate Ins. Co.*, 550 So.2d 1306, 1309 (La.App. 1 Cir. 1989). Thus, we turn to whether the privilege applies.

In *McHugh v. Chastant*, 503 So.2d 791, 793 (La.App. 3 Cir. 1987)(emphasis added)(footnotes omitted) this court stated the following regarding the anticipation of litigation privilege as applied to a UM insurer's claim file:

An insurer's file is not created in anticipation of litigation simply because it is only compiled after an accident has occurred and, therefore, at a time when litigation must be considered a possibility. It is not the date of a document which controls whether the document is exempt from production as having been prepared in anticipation of litigation, but the content, nature, and purpose of that document. *Sonier v. Louisiana Power & Light Co.,* 272 So.2d 32 (La.App. 1 Cir.1973).

Federal authority, which is persuasive in this area holds that not all documents prepared by an insurance company after a claim has arisen are prepared in anticipation of litigation. *APL Corporation v. Aetna Casualty & Surety Co.,* 91 F.R.D. 10 (D.C.Md.1980); *Westhemeco, Ltd. v. New Hampshire Insurance Co.,* 82 F.R.D. 702 (S.D.N.Y.1979); *Thomas Organ Company v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D.Ill.1972). These courts have recognized that insurers must conduct reviews of the factual data underlying the claim and **that the reports, communications, and interoffice memos or memorandums, generated through this process are prepared in the ordinary course of business and are discoverable**.

On the other hand, this court has similarly rejected the suggestion that, until an attorney is employed, an insurer's documents are not considered to be prepared in anticipation of litigation, noting that "there is always potential for litigation in the motor-vehicle accident insurance realm." *Vincent*, 237 So.3d at 57.

Additional federal authority provides a standard for determining when such a privilege applies:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.

*United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. Unit A), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320 (1981)(citations omitted) (emphasis added); *accord In re Kaiser Alum. & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000), *cert. denied*, 532 U.S. 919, 121 S.Ct. 1354 (2001).

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and counsel's involvement in the generation of the document and whether it was a routine practice to prepare that type of document versus whether the document was instead prepared in response to a particular circumstance. See *Piatkowski* [*v. Abdon Callais Offshore, L.L.C.*, No. Civ.A 99-3759 (E.D. La. 2000)(unpublished opinion)], 2000 WL 1145825 at *2; *Electronic Data Systems Corp. v. Steingraber*, No. 02-CV-0225, 2003 WL 21653414 (E.D. Tex. July 9, 2003). However, the mere fact that a defendant anticipates litigation resulting from an incident does not automatically insulate investigative reports from discovery as work-product. *Carroll v. Praxair, Inc.*, No. 05-CV-0307, 2006 WL 1793656 (W.D. La. Jun 28, 2006); see also *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982) ("The fact that a defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an 'in house' report as work product."). "<u>If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation</u>." *Piatkowski*, 2000 WL 1145825 at *2 (emphasis added).

*Hunter v. GEICO Gen. Ins. Co.*, No. Civ.A 17-5070, *15 (E.D. La. 2018) (unpublished opinion)(footnotes omitted).[2]

In *Hunter*, the court reviewed whether Geico's claim notes were protected from discovery. The court noted that much of the information in the notes "is of a sort that would be kept in the normal course of business, documenting the adjustor's routine conversations with the insured." *Id*. at p. 16. Furthermore, "majority of the entries predate the retention of counsel by GEICO and lack any indicia that counsel was involved in the generation of the document." *Id*. Additionally, the court notes that reserve information is typically discoverable in claims of bad faith, citing *Pinnacle Medical Services, Inc. v. Hanover Ins. Co.*, No. Civ.A 06-8227, *3 (E.D. La. 2008)(unpublished opinion)[3]: "While the reserves are merely statutorily-mandated estimates for accounting purposes, they are

---

[2] 2018 WL 4352823
[3] 2008 WL 11353743

nevertheless relevant, as they are valuations made by the insurers themselves which provide the Court with insight into the insurer's subjective assessment of the liability."

The Privilege Log documents in the current case contain various internal emails between James River employees, an arbitrator, and James River's counsel, as well as claim notes and an internal loss report, dating from December of 2018, one year before suit was filed, to January 2020. Many of the emails pre-date the filing of suit and can be described as emails in the course of ordinary business. For example, one discusses the relocation of an involved vehicle, another requests that a claim be opened, and another requests information regarding arbitration status. After a review of the documents, this court finds that Exhibits 1-10, and 18-20 are not protected by the work product/anticipation of litigation privilege and the trial court erred in granting the protective order regarding these exhibits.

Several exhibits were created after a demand letter was received and contain information likely created in anticipation of litigation. However, said privilege is qualified. *Hodges v. S. Farm Bureau Cas. Ins. Co.*, 433 So.2d 125 (La.1983); La.Code Civ.P. art. 1424(A). If Mr. Silvetti will be unfairly prejudiced or caused undue hardship or injustice by the denial of access to these documents, then he is entitled to their production. *Id*.

In *McHugh*, 503 So.2d at 794, the court observed that the plaintiffs' claim regarding the arbitrary and capricious nature of the UM insurer's claim denial "brings into question the insurer's actions in evaluating plaintiffs' claim. The file which plaintiffs seek to discover represents a record, perhaps the only record, of those actions." Additionally, our courts have noted that the materials in these documents "cannot be duplicated by depositions of the insurer's officers or its

8

attorney who must rely upon their memory." *Hodges*, 433 So.2d at 131; *See also McHugh*, 503 So.2d 791; *Cantrelle*, 550 So.2d 1306.

To succeed with his claim, Mr. Silvetti will need to prove that he submitted satisfactory proof of loss, that James River failed to timely tender payment, and that James River was arbitrary and capricious in failing to pay. *Thibodeaux v. Arbie*, 17-625 (La.App 3 Cir. 8/31/17), 226 So.3d 1229, *writ denied*, 17-1666 (La. 10/27/17), 228 So.3d 1207. The documents indicate that a demand was made on James River around November 2019, yet an unconditional tender was not made until August of 2020. Thus, the facts known to the insurer prior to the August 2020 tender and the actions taken by James River in evaluating Mr. Silvetti's claim will be important to Mr. Silvetti's arbitrary and capricious claim. Those facts, such as James River's awareness of Geico's liability limits, its possession of information regarding Mr. Silvetti's injuries and medical expenses, and reserve information are included in several of the Privilege Log documents.

Exhibits 12, 13, and 21, were prepared following the receipt of a demand by Mr. Silvetti. After review, we find that steps taken as documented by these exhibits are important to Mr. Silvetti's claim, and, thus, discoverable. Exhibit 11, Large Loss Report, contains much of the above stated information. Despite the document also containing an assessment of liability, aggravating factors, and proposed future actions, there is no indication that this report contains the "mental impressions, conclusions, opinions, or theories of an attorney or expert[,]" which would remain protected. La.Code Cov.P. art. 1424(A). This document contains information known to James River after demand was made by Mr. Silvetti and without access to this information, Mr. Silvetti will be prejudiced in proving his

claim. Thus, the trial court erred in granting the protective order as to this document.

As to Exhibits 14-16 and 22, these documents include correspondence with James River's attorney, or instruct certain files be sent to James River's attorney. These documents were clearly created in anticipation of litigation and providing Mr. Silvetti with these documents will not assist him in proving his claim. La.Code Civ.P. art. 1424. Additionally, though not mentioned by the trial court, we further note that La.Code Evid. art. 506 protects "confidential communication . . . made for the purpose of facilitating the rendition of professional legal services to the client . . . when the communication is [b]etween the client . . . and the client's laywer[.]" Considering the foregoing, we find no error as to the grant of protective order as to Exhibits 14-16, and 22.

Exhibit 17 contains Claims Notes dating from December 11, 2018, though December 11, 2019. Many of the notes are copies of exhibits we have now found to be discoverable. However, several of the notes are not discoverable. Specifically, page 68, the note dated 12/11/19, "Email to DC Garrison Yount" is a duplicate of Exhibit 22; Page 69, the note dated 12/11/19, "DC Garrison Yount" is a duplicate of Exhibit 14; and Page 70, the note dated 12/11/19, "SHAREFILE REQUESTED," is a duplicate of Exhibit 15. These notes are not discoverable, and the protective order was properly granted as to these notes. The remaining notes we find were either not prepared in anticipation of litigation, or we find that the disclosure of the notes is necessary as to prevent unfair prejudice and undue hardship or injustice.

For the foregoing reasons, we reverse the trial court's judgment in part and deny James River's motion for protective order as to Exhibits 1-13, 17 in part, and

18-21. The trial court's judgment is affirmed as to Exhibits 14-16, 22, and those notes specifically identified in Exhibit 17, which should be redacted prior to production.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.  RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.