# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-625


**TRAE THIBODEAUX**

**VERSUS**

**STEVEN ARVIE, JR., STATE FARM FIRE AND CASUALTY COMPANY AND PROGRESSIVE SECURITY INSURANCE COMPANY**


\*\*\*\*\*\*\*\*\*\*

SUPERVISORY WRIT FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 15-C-4566
HONORABLE GERARD CASWELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Shannon J. Gremillion, and John E. Conery, Judges.


**WRIT DENIED.**


**Gremillion, J., dissents and assigns written reasons.**

**Chuck D. Granger**
**Christopher D. Granger**
**Granger Law Firm**
**P. O. Drawer 1849**
**Opelousas, LA 70571-1849**
**(337) 948-5000**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
    **Trae Thibodeaux**

**David A. Strauss**
**Adam P. Massey**
**King, Krebs & Jurgens, P.L.L.C.**
**201 St. Charles Avenue, Suite 4500**
**New Orleans, LA 70170**
**(504) 582-3800**
**COUNSEL FOR DEFENDANT/APPLICANT:**
    **Progressive Security Insurance Company**

**SAUNDERS, Judge.**

This matter arises out of a motorcycle accident that occurred on July 19, 2015, while plaintiff, Trae Thibodeaux, was riding his 2009 Harley Davidson motorcycle eastbound on La. Hwy. 29 in Eunice. When the 2014 Ford Mustang, driven by Steven Arvie, Jr. (Arvie), proceeded to make a left-hand turn across plaintiff's lane of travel, plaintiff, to avoid a collision, made a conscious decision to apply both his front and rear brakes and lay down his motorcycle on its left side, wiping out. The parties dispute whether any contact was made between the vehicles, but if so, the contact was minimal due to plaintiff's evasive action from which he sustained extensive road burns to his hands, arms, and legs, as well as neck and back injuries. The state police investigation concluded that the accident was caused by (1) plaintiff's excessive speed, for which he was cited as he admitted that he was traveling at least 65 miles per hour in a 45 miles per hour zone, and (2) plaintiff's inattentiveness. Arvie was not cited for any violation or fault.

On October 27, 2015, plaintiff filed suit against Arvie and his insurer, State Farm Fire and Casualty Company (State Farm). He also named as a defendant, Progressive, his underinsured motorist (UM) insurance carrier. After settling with State Farm for the full policy limits of $25,000, plaintiff made a demand on Progressive, claiming his "damages exceed $50,000.00 exclusive of costs and interest." When Progressive denied the claim and refused to tender any money, plaintiff amended his original petition, adding bad faith claims against Progressive for its arbitrary and capricious denial and seeking penalties pursuant to La.R.S. 22:1892 and 22:1973.

Thereafter, Progressive filed its motion for partial summary judgment, asserting that plaintiff's bad faith claim should be dismissed because he failed to

meet his evidentiary burden for establishing bad faith in that (1) plaintiff had not shown, and could not show, that Progressive's coverage decision was "arbitrary and capricious", given the overwhelming evidence that he was responsible for his wipeout, and (2) plaintiff would not be entitled to any UM benefits unless it could be shown that Arvie was more than 55% at fault, but there was no evidence in the record that could reasonably put Arvie's degree of fault anywhere near that threshold.[1] Therefore, Progressive claimed its decision was reasonable and not in bad faith.

In opposition, plaintiff argued that (1) the issue is not whether there are genuine questions as to who was at fault, but rather whether Progressive acted in bad faith, which is a factual issue for the jury, and (2) a coverage issue under an UM policy only arises if the insured is 100% at fault, but there was ample evidence that plaintiff—the motorist with the right of way—was not 100% at fault for the wipeout caused by his evasive maneuver taken to avoid a collision with a motorist negotiating, at too slow a rate of speed, a left turn across the lane of travel. After hearing arguments, the trial court denied the motion, reasoning:

> Let me start by saying this . . . there is no question in my mind that there's going to be a question of who's at fault and what percentage of fault. That's a given, based on the evidence that's presented. . . .
> . . . I have a real problem with it, because I think to grant this summary judgment I have to review and make some credibility determinations, which I'm not allowed to do. I have a real problem with being able to do that. I mean in every case insurers have to look at is this a hundred percent fault case, is this a comparative fault case? If so, how do I evaluate it, do I evaluate damages? I think it requires some factual determinations to be made, some credibility determinations to be made, that I'm not prepared to make in a summary judgment proceeding, and as a result, I'm going to deny the motion for summary judgment for the oral reasons given today.

---

[1] According to Progressive, even if Arvie could be found 55% at fault, plaintiff could recover only 55% of his damages. Using plaintiff's high-end estimate of $44,822, plaintiff could only recover $24,652, which is $348 less than the $25,000 he collected in his settlement with State Farm. *See* Application, p. 14, n. 53.

A court of appeal has plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court. When the trial court's ruling is arguably incorrect, a reversal will terminate the litigation, and there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. *Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc.*, 396 So.2d 878 (La.1981) (per curiam). This supervisory jurisdiction may also be exercised to reverse a trial court's denial of a motion for summary judgment and to enter summary judgment in favor of the mover. *Csaszar v. Nat'l Cas. Co.*, 14-1273 (La.App. 3 Cir. 11/4/15), 177 So.3d 807, *writ denied*, 15-2221 (La. 1/25/16), 185 So.3d 752. Nevertheless, appellate courts generally will not exercise their supervisory jurisdiction when an adequate remedy exists by appeal. *Douglass v. Alton Ochsner Med. Found.*, 96-2825 (La. 6/13/97), 695 So.2d 953.

Appellate courts review motions for summary judgment de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. The reviewing court, therefore, is tasked with determining whether "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

In order to succeed on a claim for statutory penalties under La.R.S. 22:1892[2] and 22:1973,[3] an insured must show that (1) the insurer received satisfactory proof

---

[2] La. R.S. 22:1892 provides, in relevant part:

  A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised

of loss, (2) the insurer failed to tender payment within thirty or sixty days of receipt thereof, and (3) the insurer's failure to pay was arbitrary, capricious or without probable cause. *La. Bag Co., Inc. v. Audubon Indemn. Co.*, 08-453 (La. 12/2/08), 999 So.2d 1104. In *Guillory v. Lee*, 09-75, pp. 31-32 (La. 6/26/09), 16

---

Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.

. . .

(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.

(B)(1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

[3] La.R.S. 22:1973 provides, in pertinent part:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

. . .

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

. . .

(C) In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

So.3d 1104, 1127 (citations omitted), the supreme court addressed the arbitrary and capricious factor, expounding:

> With regard to what constitutes "arbitrary, capricious, or without probable cause," this court has held that the phrase is synonymous with "vexatious." Furthermore, a "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse." Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense.
>
> This court has also stated that penalties should be imposed only when the facts "negate probable cause for nonpayment." Moreover, whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action, and this court has declined to assess penalties "when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." More specifically, not only are the statutory penalties inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense, especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubt exists. An insurer who does not tender unconditionally a reasonable payment, a figure over which reasonable minds could not differ, will be subject to penalties and attorney's fees. Finally, the question of arbitrary and capricious behavior is essentially a factual issue, and the trial court's finding should not be disturbed on appeal absent manifest error.

Relying on this supreme court precedent, Progressive argues herein that the trial court erred in denying summary judgment after finding that Progressive's unrefuted evidence successfully demonstrated the existence of a genuine liability dispute because under our jurisprudence, an insurer cannot be found in bad faith when there is a valid liability dispute. Progressive further argues that plaintiff has not proven that Arvie was at fault or was even underinsured, which are both necessary to establish satisfactory proof of loss.[4] But even if it is determined that Arvie does shoulder some of the blame for the accident, Progressive claims that such a finding would not negate the fact that Progressive had a reasonable, good-

---

[4] Citing *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La.1985)(setting forth the four elements for "satisfactory proof of loss": "(1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages").

faith basis for its decision to deny plaintiff's UM claim. Therefore, as a matter of law, Progressive cannot be found in bad faith, and plaintiff's bad-faith claims should be dismissed.

In its supplemental brief, Progressive cites this court's holding in *Dodge v. Sherman*, 17-70 (La.App. 3 Cir. 6/7/17), ___ So.3d ___, for the propositions that (1) this court will accept for review a supervisory writ challenging a trial court's denial of partial summary judgment seeking dismissal of statutory bad faith claims, and (2) the dismissal of bad-faith claims on summary judgment is mandated where the plaintiff cannot prove an essential element of the claim. In *Dodge*, this court explained that it was "hornbook law" that a third-party claimant has only limited causes of action for bad faith under La.R.S. 22:1973, none of which were pled or proven in that case. *Id.* Similarly, Progressive argues that our supreme court has long held that, when an insurer denies coverage based on a reasonable liability dispute, its decision, as a matter of law, cannot be deemed arbitrary and capricious.[5] Therefore, once the trial court found there was a genuine dispute, the law required that plaintiff's bad-faith claims be dismissed.

Plaintiff, in its opposition, contends that all of the arguments presented by Progressive are fact-based arguments, which should be heard and decided by the trier of fact, and that it is obvious that there are genuine issues of material fact

_____

[5] Citing *La. Bag Co.*, 999 So.2d at 1114 ("bad faith should not be inferred"; "when there are substantial, reasonable, and legitimate questions as to the extent of an insurer's liability . . . failure to pay [timely] . . . not arbitrary, capricious or without probable cause"); *Reed v. State Farm Mut. Ins. Co.*, 03-107, p. 13 (La. 10/21/03), 857 So.2d 1012, 1021 ("penalties and attorney fees are not assessed unless a plantiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay"; "penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense"); *McDill*, 475 So.2d 1085 (sanctions not appropriate where facts support probable cause for non-payment); *Crawford v. Al Smith Plumbing & Heating Serv., Inc.*, 352 So.2d 669, 673 (La.1977)("When an insurer's termination of compensation is based upon competent medical evidence, the action is not arbitrary and capricious."); *Hebert v. S. La. Contractors, Inc.*, 238 So.2d 756, 761 (La.1970)("Penalties are stricti juris and should be enforced only in those instances in which facts clearly negate good faith and just cause in connection with refusal of allowance of compensation.").

regarding whether Progressive was arbitrary and capricious in its adjusting of this claim, all of which preclude summary judgment. Plaintiff further argues that it was Arvie's act of turning across his lane that caused this accident, not plaintiff's speeding. In support, plaintiff cites numerous authorities for the holding that speeding does not, in and of itself, require a finding of liability,[6] as well as jurisprudence on the duties and fault of motorists entering the lane of travel of another motorist with the right of way.[7] Based upon this jurisprudence, plaintiff argues a motorist traveling on a high-speed, multilane highway is not required to anticipate that a motorist entering the highway will not yield the right of way, and such motorist can indulge in the assumption that the other driver will observe the law and yield until he sees, or should see, that the other car has not observed, or is not going to observe, the law. Thus, plaintiff argues that the fault herein rests solely on Arvie who navigated his turn at too low a rate of speed, forcing plaintiff to take evasive action and wiping out.

Next plaintiff asserts that there is evidence supporting that Arvie was underinsured and criticizes Progressive's attempts to minimize the injuries suffered

---

[6] Citing *Bland v. Interstate Fire & Cas. Co.*, 311 So.2d 480, 482 (La.App. 4 Cir. 1975)("the fact that a motorist involved in an accident was speeding or intoxicated does not in and of itself require a finding of liability"); *see also Loveday v. Travelers Ins. Co.*, 585 So.2d 597 (La.App. 3 Cir.), *writ denied*, 590 So.2d 65 (La.1991)(excessive speed not a causative factor in accident); *Aguillard v. Frank*, 542 So.2d 834, 836 (La.App. 3 Cir. 1989)("While excessive speed or speed exceeding the lawful limit is a violation of the law, it is not necessarily a proximate or contributing cause of every accident."); *Fontenot v. Liberty Mut. Ins. Co.*, 130 So.2d 462 (La.App. 3 Cir. 1961)(same); *Wood v. Mfrs. Cas. Ins. Co.*, 107 So.2d 309 (La.App. 2 Cir. 1958)(finding excessive speed does not necessarily give rise to liability).

[7] *Bond v. Jack*, 387 So.2d 613, 615 (La.App. 3 Cir. 1980), *aff'd*, 407 So.2d 401 (La.1981)("It is clear from the jurisprudence that a left turning motorist bears a higher standard of care than ordinary"; standard described as "a high degree of care," "higher duty of care," "exceptional duty of care," and "considerable in degree"). In *Lang v. Cage*, 554 So.2d 1312, 1316 (La.App. 1 Cir. 1989), *writ denied*, 558 So.2d 605 (La.1990), the first circuit further explained:

> The jurisprudence of this state is well settled that a motorist who attempts to make a left turn from a public highway is required to ascertain in advance that the way is clear and that the turn can be made safely and without endangering oncoming or overtaking vehicles and he must yield the right of way to such vehicles. The failure of a left turning motorist to make such a determination and to exercise the required degree of caution before undertaking to make such a turn constitutes negligence.

by plaintiff and then arbitrarily place a value on the minimized damages. Finally, plaintiff points out that the arbitrary and capricious issue is a factual one that is not appropriate for summary judgment unless there are no genuine issues of material fact. But such issues do exist here given that, should the jury in this case decide that Progressive should have tendered some amount of money, then the jury could find that Progressive was arbitrary and capricious in its refusal to do so.

We find that the trial court refused to make, and did not actually make, a factual determination regarding the *reasonableness* of the liability dispute herein. Rather, the court merely acknowledged that liability would, in fact, be disputed. But the arbitrary and capricious aspect of the bad-faith penalty inquiry requires a factual finding of the reasonableness of the dispute, *i.e.*, a reasonable defense, as well as a finding that the insurer acted in good faith in its reliance upon that reasonable defense. Therefore, we find that the trial court correctly found that the fact-intensive inquiry herein is not ripe for resolution on summary judgment and the writ should be denied as the trial court did not err in denying summary judgment.

**<u>WRIT DENIED.</u>** We find no error in the trial court's ruling.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

17-625

TRAE THIBODEAUX

VERSUS

STEVEN ARVIE, JR., ET AL.


**GREMILLION, J.,** dissents for the following reasons:

I respectfully disagree with the majority. This is a claim for bad faith. Yet the trial court and the majority take the position that the plaintiff can survive summary judgment without providing any evidence of bad faith. I see repeatedly the conclusion that no such evidence is necessary. Rather, all the plaintiff must do is argue that he might not be completely at fault and he can subject the UM insurer to a trial, not only as to liability and damages, but also as to bad faith. Moreover, not only is a liability dispute insufficient to demonstrate good faith on the part of the insurer, but indeed, no other evidence of bad faith is required to preclude summary judgment on a bad-faith claim. According to my colleagues, evidence that the insurer might be liable substitutes seamlessly for evidence of bad faith sufficient to deny summary judgment. I disagree.

Case in point would be the trial court's oral reasons cited by the majority. It does not so much as mention the words "bad faith" or "arbitrary and capricious." It certainly points to no evidence of bad faith in the record that would or could preclude summary judgment. Rather, the trial court based its ruling as to bad faith on the issues of fault, fault allocation, and evaluation of damages.

Is a finding of genuine issues as to liability, without more, the same as a finding of genuine issues as to bad faith? Is evidence suggesting the defendant may be assessed some comparative fault, without more, equivalent to evidence suggesting arbitrary and capricious claim handling? Does the possibility that the trial court may have to evaluate damages tomorrow, without more, automatically establish the possibility that the UM insurer was unfair, lacking in good faith, and/or vexatious yesterday? If the answer to any of these questions is yes, then I stand corrected and summary judgment should be denied. That would also mean that a UM insurer may never choose to defend itself without being subject to a bad-faith claim regardless of the results of its investigation.

However, I do not find that is the state of the law. Rather, to survive summary judgment, the plaintiff must provide some evidence, not merely that he might prevail in whole or in part at some possible future trial, but that there is "no substantial, reasonable, and legitimate questions as to the extent of the insurer's liability."

Even the most cursory reading of the record establishes that there are substantial, reasonable, and legitimate questions which, as a matter of law, preclude a finding of bad faith. With regard to liability, there is evidence that the plaintiff was speeding. He admitted to traversing a road governed by a 45 mile per hour speed limit at 65 miles per hour. Multiple witnesses confirmed he was driving excessively fast. The investigating officer also found that to be true, and issued the plaintiff a citation accordingly. Finally, two experts conducted calculations based on evidence collected at the scene. One concluded that he was going at least 65 miles per hour, and the other concluded that he was going 78 miles per hour. This alone establishes substantial, reasonable, and legitimate questions of liability that preclude a future finding of bad faith.

2

In addition, the record reveals that the investigating officer, a 17-year veteran trooper, determined that the cause of the accident was not only the plaintiff's speeding but also his inattentiveness. Further, there is abundant evidence in the record indicating that this was actually a one-vehicle accident, with the plaintiff's motorcycle not even touching the defendant vehicle. Moreover, multiple witnesses and the investigating officer concluded that, despite the plaintiff approaching at 25 to 38 miles over the speed limit, the other driver was still able to avoid the collision. In fact, the only evidence to the contrary is the plaintiff's testimony that he "thinks" he "nicked" the other vehicle.

Leaving liability and turning to damages, there is evidence that the plaintiff has already received $25,000 for a minor injury. The UM insurer's investigation revealed medical records showing the plaintiff began reporting he was pain-free from about three months post-accident.

The significant evidence put on by the defendant overwhelmingly establishes that there are "substantial, reasonable, and legitimate questions" regarding its liability, and the claims-handler had "probable cause" for its actions. Thus, in order to defeat this summary judgment motion, the plaintiff must have presented evidence that the UM insurer denied the claim not because of legitimate questions and probable cause, but rather merely to be "vexatious" and therefore, "unjustified".

It is true that the record also contains other evidence that contradicts the significant evidence I have pointed out. And, it is certainly true that the fact-finder could find the countervailing evidence to be more credible. According to the majority's logic, if that occurs, then defendant should have predicted that result and based its handling of the claim on that prediction rather than on the results of the investigation it was duty-bound to undertake. This absurd result is not the law.

3

The insurer cannot become retroactively unreasonable if the fact-finder later decides against it. Logic and fundamental fairness operate against such a result. That is why the supreme court instructs that the plaintiff must be able to present "facts" that "negate probable cause for nonpayment." *Louisiana Bag Co., Inc. v. Audubon Indent. Co.*, 08-453, p.14 (La.12/2/08), 999 So.2d 1104, 1114. These are not to be facts as they are determined by the judge or jury at the time of trial as supposed by the trial court and the majority. Rather, they are to be "facts known to the insurer at the time of its action." *Guillory v. Lee*, 09-95, p. 31-32 (La. 6/26/09), 16 So.3d 1104, 1127, citing *Louisiana Bag Co.*, 999 So.2d at 1115.

If there is a genuine issue of material fact as to bad faith now, then I simply cannot imagine a set of circumstances where there would be no such issue. In other words, if this UM insurer must face trial on this bad-faith claim, then when would a UM insurer ever be allowed to defend itself without having to face a bad-faith claim? I would grant the summary judgment.