# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-566

**TRISTIAN KITTS**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET AL.**

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2019-2118
HONORABLE DERRICK E. KEE, DISTRICT JUDGE

************

**SYLVIA R. COOKS**
**CHIEF JUDGE**
************

Court composed of Sylvia R. Cooks, Chief Judge, Shannon J. Gremillion and D. Kent Savoie, Judges.

**AFFIRMED.**

**Steven Broussard**
**Aaron Broussard**
**Michael Williamson**
**Broussard & Williamson, LLC**
**1301 Common Street**
**Lake Charles, LA 70601**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Tristian Kitts**

**John W. Penny, Jr.**
**C. Shannon Hardy**
**Penny & Hardy, APLC**
**P.O. Box 2187**
**Lafayette, LA 70502-2187**
**(337) 231-1955**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Allstate Property & Casualty Insurance Co.**

**COOKS, Chief Judge.**

On May 8, 2018, Plaintiff, Tristian Kitts, was driving a pickup truck westbound on Highway 90 in Sulphur, Louisiana. Without warning, a 2005 Chevrolet Silverado driven by Clarence Langley, while traveling eastbound on Highway 90, suddenly turned left directly into the path of Plaintiff's vehicle. The resulting collision drove Plaintiff's pickup truck into a nearby utility pole, where it came to rest. The force of the collision caused the air bag in Plaintiff's vehicle to deploy, totaled Plaintiff's vehicle and threw debris into the air, damaging two other nearby vehicles.

Plaintiff was transported by ambulance from the crash scene to the emergency room. He was experiencing headaches, neck pain, mid and lower back pain with tingling down his left arm. Plaintiff also had cuts and abrasions from his seat belt and the deployment of the air bag. He was prescribed medications for pain and muscle spasms.

Two days following the accident, Plaintiff began treating with Fey Chiropractic due to his neck and back pain. He had a total of thirty-eight treatments from Fey Chiropractic over the next fifteen months, with the last visit occurring on August 9, 2019. He was referred to Muscle Activation of Louisiana for core strengthening and attended two sessions as recommended. Plaintiff also went to fourteen sessions of physical therapy during the first seven months after the accident. The records show Plaintiff consistently complained of significant pain during the time period, which was exacerbated by his work as a welder.

In August of 2018, Plaintiff underwent a MRI of his lumbar spine. The MRI revealed pars defect/fracture at the L5 level, as well as disc bulging at the L3-4, L4-5 and L5-S1 levels. Plaintiff underwent an evaluation by Dr. Brian Kelley at the Center for Orthopaedics. After an examination and review of the MRI, Dr. Kelley confirmed that Plaintiff had bilateral pars defect/fracture at the L5 level and

protrusions pushing into his discs at L2, L3, L4 and L5 levels. Dr. Kelley could not say unequivocally whether the pars defect was caused by the accident or existed prior; however, he stated if it was there prior to the accident, it was made symptomatic by the accident. Dr. Kelley opined that Plaintiff could suffer from periodic bouts of pain due to the pars defect for the rest of his life.

Plaintiff filed a petition for damages in May of 2019. Named as defendants were Clarence Langley and his insurer, State Farm Mutual Automobile Insurance Company, and Allstate Property and Casualty Insurance Company, which provided uninsured/underinsured motorist coverage to Plaintiff. Clarence Langley had liability insurance through State Farm with $100,000 policy limits. On August 30, 2019, Plaintiff settled with Langley and State Farm for $90,000. On September 6, 2019, Plaintiff offered to settle his UM claim with Allstate for $10,000. Allstate did not respond to the settlement offer.

Dr. Kelley, who had yet to be deposed, gave his deposition on July 28. 2020, relating the pars defect to the subject crash and stating it was his opinion that plaintiff would continue to suffer from the pars defect in the future. Allstate did not retain a medical expert to counter Dr. Kelley's conclusions or have Plaintiff undergo an independent medical examination. With Allstate refusing Plaintiff's offer to settle, the matter proceeded to trial.

The parties stipulated that Langley was solely at fault in causing the accident and that Plaintiff's medical expenses totaled $17,255.75. Plaintiff testified at trial, as did Plaintiff's mother. Dr. Kelley's deposition was introduced at trial. Allstate called no witnesses at trial, nor did it offer any contrary medical testimony to Dr. Kelly. Allstate's primary argument was that Plaintiff's agreement to settle for less than State Farm's policy limits of $100,000 was a strong indicator that the value of Plaintiff's claim was not such as to warrant underinsured motorist benefits in excess of State Farm's policy limits.

The trial court found in favor of Plaintiff, finding Allstate's entire UM policy limit of $15,000 was owed. The trial court also found Allstate was arbitrary and capricious in refusing to make a tender after having received satisfactory proof of loss. Allstate was assessed a 50% penalty of $7,500 and attorney fees in the amount of $10,000. The trial court's oral reasons for judgment indicate it concluded that Plaintiff's settlement with State Farm for less than its policy limits did not create any presumption that Plaintiff's damages did not exceed $100,000. The trial court found there was "clear evidence that there was causation between the pars defect and – fracture and it was related to this accident." The trial court further concluded "after the pars defect came into play, this was a policy limits case, period."

Allstate appealed the trial court's judgment, seeking a reversal of the entirety of the judgment. Allstate maintains it was never provided satisfactory proof of loss that warranted any tender, that the damages fell well below State Farm's policy limits of $100,000, and that there was no arbitrary and capricious behavior on its part. Allstate also argues the trial court improperly handed over to Plaintiff's counsel portions of Allstate's claims file that were irrelevant, privileged and not subject to production.

Plaintiff answered the appeal and argues, pursuant to La.Code Civ.P. art. 2164, he is entitled to damages, costs and attorney fees for a frivolous appeal.

**ANALYSIS**

In its first assignment of error, Allstate maintains the trial court erred in awarding Plaintiff Allstate's policy limits of $15,000. Allstate largely bases this argument on its contention that the pars defect was not causally related to this crash. Allstate asserted in brief that Dr. Kelley was not able "to causally connect the pars defect to the accident." This contention is not supported by the record. Dr. Kelley's deposition testimony established his belief that the crash either caused the pars defect or made the condition symptomatic. He further stated it was his opinion that plaintiff

4

would more likely than not continue to suffer from the pars defect in the future. Allstate did not retain a medical expert or offer any medical testimony to counter Dr. Kelley's opinion as to the pars defect being causally related to the accident and the likelihood Plaintiff would continue to suffer from it well into the future.

"The primary objective of general damages is to restore the party in as near a fashion as possible to the state he was in at the time immediately preceding injury." *Anderson v. State of Louisiana*, 18-01, p. 20 (La.App. 3 Cir. 8/29/18), 258 So.3d 925, 938 (quoting *Daigle v. U.S. Fidelity and Guar. Ins. Co.*, 94-304 (La. App. 1 Cir. 05/05/95), 655 So.2d 431, 437). As Plaintiff notes, the severity and duration of pain and suffering are primary factors in considering and assessing quantum of general damages. *Guidry v. Allstate Ins. Co.*, 11-517 (La. App. 3 Cir. 12/21/11), 83 So.3d 91, *writ denied*, 12-225 (La. 3/30/12), 85 So.3d 121. In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must first look to the individual circumstances of the case before it. *Broussard v. Peltier*, 479 So.2d 679 (La.App. 3 Cir.1985). Only if an analysis of the facts reveals an abuse of discretion can the appellate court disturb the award. *Reck v. Stevens*, 373 So.2d 498 (La.1979); *Clark v. State Farm Ins. Co.*, 520 So.2d 860 (La.App. 3 Cir.1987).

Plaintiff's vehicle was totaled as a result of the accident. He underwent a significant period of chiropractic treatment, physical therapy and core strengthening to cope with his back pain. The medical testimony also revealed Plaintiff suffered from anxiety and depression, for which he was sent to counseling and prescribed Lexapro. At the time of the accident, Plaintiff was only eighteen years old. Plaintiff's chosen profession was as a welder, the physical demands of which led to flare-ups of lower back pain, which Dr. Kelley's uncontroverted medical testimony stated would last well into the future. After a thorough review of the record, we find

no basis to conclude the trial court abused its discretion in finding Plaintiff's damages entitled him to the $15,000 limits of the Allstate policy.

Allstate next argues the trial court erred in finding it acted in bad faith in refusing to tender after receiving satisfactory proof of loss. Louisiana Revised Statute 22:1892 provides for the imposition of a penalty and an award of attorney fees against an insurer that fails to pay a claim due its insured within thirty days of receipt of satisfactory proof of loss if said failure is arbitrary, capricious or without probable cause. This statute has been found applicable to uninsured motorist claims. *Hart v. Allstate Insurance Co.*, 437 So.2d 823 (La.1983). In order to establish an insured's legal entitlement to recover under a UM policy, a plaintiff must be able to establish that the insurer received satisfactory proof of loss that was sufficient to fully apprise the insurer of the insured's claim. *Id.*

Allstate maintains it never received satisfactory proof of loss in this case. It further asserts Plaintiff's UM claims were "not supported by any additional medical treatment or evidence of any ongoing complaints or need for further treatment." We do not agree and find this argument ignores the fact that Dr. Kelley's deposition came after the settlement with State Farm. As was noted earlier in this opinion, Dr. Kelley's deposition confirmed that Plaintiff suffered from a bilateral pars defect either caused by the accident or made symptomatic by the accident. He further stated the pars defect would more likely than not cause symptoms for Plaintiff well into the future. Allstate offered no contradictory medical opinion to counter Dr. Kelley's deposition testimony, leaving Plaintiff's evidence undisputed. Therefore, we cannot say the trial court manifestly erred in finding Allstate's defense was arbitrary, capricious and without probable cause in failing to tender after receipt of satisfactory proof of loss.

Allstate's final assignment of error asserts the trial court committed manifest error in ordering the production of portions of Allstate's claims file. On February 9,

2021, Plaintiff filed a Motion to Compel Allstate's claims file, to which Allstate filed an opposition. A hearing was held on the motion on April 21, 2021. During the hearing, Plaintiff's counsel notified the court he was dismissing his previously issued subpoena to Allstate's former trial counsel to testify at trial. The trial court granted the motion and ordered Allstate to produce its entire file for an in camera inspection.

Recently, this court in *Silvetti v. GEICO Cas. Co.*, 21-96 (La.App. 3 Cir. 7/14/21) (unpublished opinion), writ denied, 21-1201 (La. 11/10/21), 321 So.3d 1248, discussed the relevance and discoverability of a UM insurer's claims file requested by the insured who was pursuing a bad faith claim against the UM insurer. The trial court granted the insurer's motion for protective order shielding the privileged log items from discovery after an in camera inspection. This court granted writs and reversed the order of protection as to some of the items in the claims file. This court cited the relevant law that in order to succeed on a claim of bad faith against the insurer a claimant must show (1) the insurer received satisfactory proof of loss, (2) the insurer failed to render payment within thirty or sixty days of receipt thereof, and (3) the insurer's failure to pay was arbitrary, capricious or without probable cause. *Thibodeaux v. Arbie*, 17-625 (La.App. 3 Cir. 8/31/17), 226 So.3d 1229. The *Silvetti* court found "[a]ny document which reflects the knowledge of the claim due and actions or inactions taken or discussed by [the insurer] or its attorney during the pendency of the suit for damages would be relevant to the subject matter of the action[.]" *Silvetti*, at p. 5 (quoting *Cantrelle Fence & Supply Co. v. Allstate Ins. Co.*, 550 So.2d 1306 (La.App. 1 Cir.1989), *writ denied*, 559 So.2d 123 (La.1990)). We do note the *Silvetti* concluded the trial court did not err in granting protective orders as to certain exhibits, which included correspondence between the insurer and attorney. Allstate argues the admission of the portions of Allstate's claims file violated the attorney-client privilege set forth in La.Code Civ.P. art. 1424(A), which states "the court shall not order the production or inspection of any

7

part of the writing, or electronically stored information, that reflects the mental impressions, conclusions, opinions, or theories of an attorney."

Allstate specifically complains the trial judge in this case, in discussions with Plaintiff's counsel, referenced certain statements made by Allstate's prior counsel in reference to the trial judge originally assigned this case that he deemed "inappropriate." Counsel for Allstate noted to the trial court that any reference to the prior trial judge was totally irrelevant to the case presently before the court. The trial court responded "[s]ubmitted respectfully and accepted." We need not resolve whether the attorney-client privilege was breached because a review of the trial court's reasons for judgment clearly reflect any "inappropriate" comments made as to the prior district judge by Allstate's former counsel had no bearing on the judgment rendered. The trial court could not have been more adamant in his belief that the amount of damages in this case was significantly more than the State Farm policy limits and that the pars defect was caused by the accident. The trial court stated:

> But I will say that there was clear evidence that there was causation between the pars defect and – fracture and it was related to this accident. There's no doubt about that.
>
> . . .
>
> Because the question is whether or not any good faith tender was made after satisfactory proof of loss was shown and after the pars defect came into play, this was a policy limits case, period.
>
> . . .
>
> we're not going to be able to calculate when he's going to hurt, or we don't know when he's going to have to lift welding supplies, or we don't know if he's whining and complaining to his boss or not everyday and taking a chance of losing a job when clearly Allstate is not going to pay him anything else out of their minimal $15,000 policy. That they're willing to pay $7,500 toward defense costs but not $10,000 to resolve this case. It's their decision.
>
> . . .

And there hasn't been a single penny tendered, not a dime, to a young man who is 18 years old, now 21, who is sitting here saying I'm going to be hurting for the rest of my life indefinitely, or maybe it will stop three years from now because he said I will live with it.

It's bad faith, and it's arbitrary, and its capricious. And there's no way around it.

. . .

And we don't know when he's gonna be done hurting. And his insurer Allstate did know. They had an obligation to simply pay him the $15,000. This is a $200,000 case, easy. That's my – not my assessment, that's what this case should – should have gone for.

Therefore, it is clear the trial court's finding that Allstate was guilty of bad faith was not influenced by any in camera examination of Allstate's claims file.

Plaintiff answered the appeal and requests damages for a frivolous appeal under La.Code Civ.P. art. 2164. "This provision is penal in nature and is to be strictly construed." *Capdeville v. Winn Dixie Store # 1473*, 07-1425 (La.App. 3 Cir. 4/9/08), 981 So.2d 121, 125. "An appeal will not be deemed frivolous unless it is taken solely for delay, fails to raise a serious legal question, or counsel does not seriously believe in the proposition of law he is advancing." *Id*. at 125. Appeals are favored and appellate courts are reluctant to impose damages for frivolous appeals. *Id*.

Although Allstate did not prevail at the trial level nor on appeal, we cannot say the appeal was taken solely for delay or that counsel for Allstate did not seriously believe it was entitled to relief. Thus, an award of damages for frivolous appeal is not warranted.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, Allstate Property & Casualty Insurance Company.

**AFFIRMED.**